[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 235.]

THE STATE EX REL. MALLORY, APPELLANT, *v.* PUBLIC EMPLOYEES

RETIREMENT BOARD ET AL., APPELLEES.

[Cite as *State ex rel. Mallory v. Pub. Emp. Retirement Bd.*, 1998-Ohio-380.]

*Mandamus to compel Public Employees Retirement Board to credit relator with*
*fourteen years of service as a public employee with the Franklin County*
*Public Defender's Office—Writ granted, when.*

(No. 97-231—Submitted January 13, 1998—Decided June 24, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD05-674.

————————————

{¶ 1} In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defender Act. The Act established the Ohio Public Defender Commission and authorized counties to create county and joint county public defender commissions. 136 Ohio Laws, Part I, 1868. In accordance with R.C. 120.13, the Franklin County Commissioners established the Franklin County Public Defender Commission ("commission") to provide legal representation to indigent persons as required by law. Pursuant to R.C. 120.14, the commission appointed the Franklin County Public Defender. Attorney James Kura was appointed to the position. Kura then hired attorneys and support personnel to form the Franklin County Public Defender's Office ("FCPDO"). The FCPDO employed many of the same attorneys and staff who were formerly employed by the Franklin County Legal Aid and Defender Society, a nonprofit corporation that ceased its work in the criminal defense area in 1976. The FCPDO, thereafter, provided public defender services to indigent criminal defendants in Franklin County, and pursuant to R.C. 120.18, Franklin County received reimbursement from the state for the cost of operating the FCPDO. Once established, the FCPDO operated as if it were a non-public, unincorporated association and both the FCPDO, as an employer, and its employees

paid Social Security taxes on their wages. The commission and Kura considered the FCPDO to be a non-county agency and thus FCPDO employees were not treated as "public employees" for purposes of the Public Employees Retirement System ("PERS").

{¶ 2} Under the 1976 Public Defender Act, in addition to Franklin County, twenty-four other counties established county public defender commissions that appointed county public defenders. Twenty-three of these counties treated employees of their public defender offices as county employees and members of PERS. Summit County was the only other county, besides Franklin, that considered employees of the public defender's office to be private employees.

{¶ 3} In 1979, the Ohio Attorney General issued an opinion determining that county public defenders and members of county public defender commissions were public *officers* instead of public *employees,* and thus concluded that a board of county commissioners had no statutory authority to provide personal liability insurance for the benefit of the officers. The Attorney General also advised, however, that malpractice and personal liability insurance could be procured for staff attorneys and other employees of county public defenders because those employees were public employees.

{¶ 4} In 1980, the State Auditor informed Summit County officials that the county's public defender office was operating illegally and was not entitled to state reimbursement under R.C. 120.18. Summit County permitted the office to continue to operate, but without state reimbursement. The State Auditor's action evidently resulted from an informal 1980 opinion issued by the Administrative Agencies Section Chief of the Attorney General's Office, wherein the section chief had concluded that employees of county public defender offices were county employees for purposes of PERS.

{¶ 5} Minutes from the commission's 1980 meetings clearly indicate that Kura and members of the commission were keenly aware of the Attorney General's

opinions and, consequently, decided that an amendment to R.C. Chapter 120 was necessary to "legalize the way [the FCPDO] operates." In addition, the Ohio Public Defender informed Kura as early as 1980 that the FCPDO was not legally constituted and that it was a county agency. During one of the commission's 1982 meetings, Kura conceded that if R.C. Chapter 120 were not amended the State Auditor would advise the FCPDO that it needed to treat its employees as county employees. Further, Kura advised one commission member that the commission did not have to worry about the possibility of FCPDO employees raising the issue of entitlements to PERS membership because the new amendment to R.C. Chapter 120 would include a provision retroactively legalizing the FCPDO's operation as a private entity.

{¶ 6} In 1984, the General Assembly enacted R.C. 120.14(F) to specifically permit county and joint county public defender commissions to contract with non-profit organizations to provide representation to indigent criminal defendants. 140 Ohio Laws, Part I, 949, 956-957. However, R.C. 120.14(F) did not contain a provision giving it retroactive effect. Following the enactment, the FCPDO was incorporated as a non-profit corporation. Thereafter, the commission (Franklin County Public Defender Commission) contracted with the county commissioners and the city of Columbus to provide legal representation for indigent criminal defendants in Franklin County, and the commission subcontracted with the newly incorporated FCPDO to provide the contracted-for services.

{¶ 7} Appellant, Diane Mallory, was employed at the FCPDO as a law clerk from June 1978 to September 1980 and as an attorney from February 1982 to January 1994. During appellant's employment with the FCPDO, no contributions to PERS were made on her behalf. Instead, appellant and the FCPDO paid Social Security taxes. According to appellant, on at least one occasion prior to 1984, she had advised Kura that she wanted to participate in PERS. Notably, appellant never

requested to have her earnings exempted from PERS contributions. Since 1994, appellant has been a state employee and a contributing member of PERS.

{¶ 8} In September 1994, appellant filed a request seeking service credit in PERS for her fourteen years of employment with the FCPDO. PERS denied appellant's request because it found that the FCPDO had been a private, non-profit organization throughout appellant's employment with the office. In denying appellant's claim, PERS noted the following:

"The crux of your position that you were a 'public employee' rests not on the facts, but rather on the legal argument that the commission operations as conducted were unlawful under Chapter 120, Ohio Revised Code. Consequently, individuals acting as public defenders only could be employees of the county. The legal authority which you have cited does not address this legal argument. In addition, and more significantly, *PERS cannot make a legal determination that something is unlawful under statutes which it neither administers nor enforces.* The retirement system can only make a factual determination on whether someone is a public employee employed by a public employer. The facts under review support the determination that you were not a public employee. *Whether as a matter of law the commission acted properly under Chapter 120 is something that must be resolved, if necessary by litigation, between you and the commission.*" (Emphasis added.)

{¶ 9} Appellant appealed the staff determination to appellee Public Employees Retirement Board ("board") pursuant to Ohio Adm. Code 145-21-03. The board affirmed the staff decision denying appellant's request for PERS service credit. The board determined, in part, that appellant raised a legal issue that was beyond its authority to address.

{¶ 10} In May 1996, appellant filed a complaint for writ of mandamus in the Court of Appeals for Franklin County, naming, as respondents, the board and the Franklin County Commissioners. Appellant requested the issuance of a writ to

compel the board to credit her with fourteen years of service as a public employee with the FCPDO and to order the Franklin County Commissioners to remit employer and employee contributions to PERS for those years on behalf of appellant. The court of appeals granted the Franklin County Public Defender permission to intervene as a respondent. The parties filed evidence and briefs in support of their respective positions. The court of appeals denied appellant's request for a writ of mandamus, stating:

"After the passage of R.C. 120.14(F) [in 1984], the FCPDO changed the structure of its organization to a non-profit organization and filed articles of incorporation. Immediately thereafter, the FCPDO, as an unincorporated association, assigned all its rights, title and interest, to the tangible and intangible property held by it to the FCPDO, as an Ohio not-for-profit corporation. However, because R.C. 120.04(C)(3) had already authorized the Franklin County Public Defender to contract with a private organization for providing legal services to the indigent, relator's argument fails. In 1984, the FCPDO changed its status as an unincorporated association to a not-for-profit corporation for whatever reasons. However, that does not change the fact that, pursuant to the statute in effect in 1976, the right to contract with a private organization to supply legal services for the indigent already existed."

{¶ 11} This cause is now before this court upon an appeal as of right.

———————————

*Jones, Day, Reavis & Pogue, Richard A. Chesley* and *Jonathan K. Stock*, for appellant.

*Betty D. Montgomery*, Attorney General, and *James M. Harrison*, Assistant Attorney General, for appellee Public Employees Retirement Board.

*Ron O'Brien*, Franklin County Prosecuting Attorney, *Anne E. Thomson* and *Bonnie L. Maxton*, Assistant Prosecuting Attorneys, for appellees Franklin County Commissioners.

*Carlile Patchen & Murphy LLP, Denis J. Murphy* and *Charles L. Bluestone*, for appellee Franklin County Public Defender.

_____

**DOUGLAS, J.**

{¶ 12} The parties present a number of arguments for our consideration. We have carefully reviewed these arguments and have conducted a thorough review of the record. For the reasons that follow, we reverse the judgment of the court of appeals and grant appellant's requested writ of mandamus.

I

{¶ 13} Appellees concede that an action in mandamus is the appropriate remedy to determine appellant's claimed entitlement to service credit in PERS. See, *e.g.*, *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994), 71 Ohio St.3d 362, 364, 643 N.E.2d 1122, 1125; *McAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio* (1994), 93 Ohio App.3d 353, 357, 638 N.E.2d 617, 619-620; R.C. 145.01(A). To be entitled to the requested writ of mandamus, appellant must establish that the board abused its discretion by denying her request for PERS service credit. See *State ex rel. Schwaben v. School Emp. Retirement Sys.* (1996), 76 Ohio St.3d 280, 282-283, 667 N.E.2d 398, 400-401; *McAuliffe*, 93 Ohio App.3d at 357, 638 N.E.2d at 620. The board abused its discretion if it acted in an unreasonable, arbitrary, or unconscionable manner. *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, 1283.

{¶ 14} With a few exceptions that are inapplicable here, membership in PERS is compulsory for public employees of the state and local authorities specified in R.C. 145.01. R.C. 145.03; *Lancaster v. Pub. Emp. Retirement Sys.* (1987), 40 Ohio App.3d 135, 137, 532 N.E.2d 144, 146. R.C. 145.01(A) provides that "[i]n all cases of doubt, the public employees retirement board shall determine whether any person is a public employee, and its decision is final." To make the determination required here, an analysis of R.C. Chapter 120 is necessary. The

board believed that it was beyond its authority to determine whether the commission and the FCPDO acted lawfully and in accordance with R.C. Chapter 120. The board was in error.

{¶ 15} It is true that the board, like other administrative agencies, lacks jurisdiction to rule on the constitutional validity of statutes. See *State ex rel. Rootstown Local School Dist. Bd. of Edn. v. Portage Cty. Court of Common Pleas* (1997), 78 Ohio St.3d 489, 494, 678 N.E.2d 1365, 1369. However, in reaching the merits of appellant's claim, the board was not called upon to decide the *constitutionality* of a statute. What the board was asked to do was to consider any and all statutes that might be pertinent in regard to appellant's status as a public employee. In this regard there is nothing in R.C. 145.01(A) that limits the board to interpreting only those statutes that the board administers. Therefore, the board erred in concluding that it did not have the statutory authority to construe R.C. Chapter 120 to determine whether appellant was a public employee for purposes of PERS during her employment at the FCPDO.

II

{¶ 16} Appellant asserts that the board abused its discretion by determining that she was not a "public employee" for purposes of compulsory PERS membership when she was employed by the FCPDO. We agree.

{¶ 17} R.C. 145.01(A)(1) defines "[p]ublic employee" for purposes of compulsory membership in PERS to include "[a]ny person holding an office, not elective, under the state or any county, township, municipal corporation, * * * or board, bureau, commission * * * or administrative body as the same are, or have been, created by action of the general assembly or by the legislative authority of any of the units of local government named in this division, or employed and paid in whole or in part by the state or any of the authorities named in this division * * *." This court has previously stated that pension provisions like R.C. 145.01(A) must be liberally construed in favor of the public employees and their dependents

who the statutes were designed to protect. See, generally, *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65-66, 647 N.E.2d 486, 489; *State ex rel. Teamsters Local Union 377 v. Youngstown* (1977), 50 Ohio St.2d 200, 205, 4 O.O.3d 387, 390, 364 N.E.2d 18, 21.

{¶ 18} In the case at bar, the commission was established and Kura was appointed as the Franklin County Public Defender pursuant to the Public Defender Act of 1976. "A 'public office' generally denotes exercise of certain independent public duties and embodies part of the sovereignty of the governmental unit involved." *State ex rel. Buian v. Kadlec* (1978), 56 Ohio St.2d 116, 117, 10 O.O.3d 307, 383 N.E.2d 119, 120-121; *State ex rel. Mikus v. Hirbe* (1965), 5 Ohio App.2d 307, 310, 34 O.O.2d 490, 492, 215 N.E.2d 430, 432. Both the commission and Kura exercised powers and duties pursuant to the Public Defender Act to comply with the governmental duty to provide assistance of counsel to indigent criminal defendants.

{¶ 19} Similarly, pre-1984 FCPDO employees like appellant were public employees during their employment with the FCPDO. Pursuant to statutory authority, FCPDO employees were employed by a county agency (the commission) and a county officer (Franklin County Public Defender Kura) to perform a governmental function, *i.e.,* the function of providing legal representation to indigent criminal defendants, for which FCPDO employees were paid by the county. In creating the commission and appointing the Franklin County Public Defender, the board of county commissioners acted pursuant to the authority vested in them by the General Assembly. In that same vein, the commission and Kura followed the statutory scheme of the Public Defender Act in creating the FCPDO. See R.C. 120.15(B) ("In carrying out the responsibilities and performing the duties of his office, the county public defender shall: [1] Maintain an office, approved by the commission * * *."); R.C. 120.14(B) ("The commission shall determine the

qualifications and size of the supporting staff and facilities and other requirements needed to maintain and operate the office of the county public defender."); R.C. 120.14(C) ("In administering the office of county public defender, the commission shall: [1] Recommend to the county commissioners an annual operating budget which is subject to the review, amendment, and approval of the board of county commissioners."). Further, the state reimbursed Franklin County for some of the operating expenses of the FCPDO in accordance with R.C. 120.18(A). Based upon the foregoing, appellant clearly falls within the definition of "public employee" as defined by R.C. 145.01(A), and consequently was entitled to membership in PERS when she was employed at FCPDO.

{¶ 20} Moreover, our conclusion that appellant was a "public employee" covered by PERS during her employment with the FCPDO is also supported by, among other things,[1] the actions of Kura and the commission in actively advocating the 1984 amendment to R.C. Chapter 120. Kura and the commission essentially acknowledged that the 1984 amendment to R.C. Chapter 120 was necessary to "legalize" the FCPDO and thereby conceded that, prior to the amendment, the FCPDO was a county agency staffed by county employees.

### III

{¶ 21} Nevertheless, the court of appeals found no abuse of discretion in the board's determination that appellant was not a public employee covered by PERS during her employment with the FCPDO. In so holding, the court of appeals noted that prior to the 1984 enactment of R.C. 120.14(F), Kura had authority pursuant to R.C. 120.15(C) and 120.04(C)(3) to "[m]ake all the necessary arrangements to

---

1. Further, our finding is in accord with administrative opinions, including the informal 1980 opinion by the Administrative Agencies Section Chief of the Attorney General's Office cited by the parties. See, also, 1979 Ohio Atty. Gen. Ops. No. 79-084 (County public defender commission members and county public defenders are county officers, and staff hired to assist public defenders are county employees.); 1987 Ohio Atty. Gen. Ops. No. 87-102; and 1976 Ohio Ethics Comm. Ops. No. 76-001.

coordinate the services of the office with any * * * private programs established to provide legal representation to indigent persons and others * * *." The court of appeals concluded that Kura thus had authority to contract with a private program [FCPDO] to provide indigent legal representation. We respectfully disagree with the court of appeals' analysis of this issue.

{¶ 22} The record before us is devoid of any evidence of a contract, written or oral, between Kura and the FCPDO. Contrary to the Franklin County Public Defender's assertion on appeal, the fact that appellant stipulated that Kura hired attorneys and support personnel to form the FCPDO does not establish a contract between Kura and a "private program" referred to as the FCPDO. This argument, since the FCPDO did not exist before Kura hired a staff, is without merit.

{¶ 23} Even assuming evidence of a contract between Kura and the FCPDO, the contract would have been invalid under R.C. 2921.42, which defines unlawful interests in public contracts. R.C. 2921.42(A)(4) prohibits any public official from knowingly having "an interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency or instrumentality with which he is connected[.]" See *State v. Pinkney* (1988), 36 Ohio St.3d 190, 522 N.E.2d 555. In concluding that Kura had contracted with a private organization known as the FCPDO, the court of appeals neglected to consider that a clear conflict of interest would have existed if Kura, acting in his official capacity as the Franklin County Public Defender, was permitted to determine the adequacy of services provided to the county by the "private agency" Kura himself directed.[2]

---

2. The Administrative Agencies Section Chief of the Attorney General's Office concluded in his March 14, 1980 informal opinion that R.C. 2921.42 "prohibits a county public defender from serving as the director of a non-profit corporation supplying legal services pursuant to contract to the office of the county public defender." The section chief reasoned that "[w]ere it otherwise, the county public defender would be in the anomalous position of passing, in his official capacity, upon the adequacy of the services delivered to the county by the agency he directs." We find this reasoning to be persuasive.

{¶ 24} The Franklin County Public Defender, however, argues that the prohibition against a public official having an interest in a public contract does not apply where the criteria set forth in R.C. 2921.42(C)[3] are met and that Kura's dealings with the FCPDO were within the statutory exemption. We disagree.

{¶ 25} The Franklin County Public Defender has fallen substantially short of satisfying the stringent four-part test set forth by R.C. 2921.42(C). The Franklin County Public Defender has made no showing, beyond mere assertions, that the exemption of R.C. 2921.42(C) is applicable herein. In fact, contrary to these assertions, attorneys for the Franklin County Public Defender admit that Kura actively participated in both the commission's discussions and vote regarding the employment of the FCPDO, essentially conceding that Kura's actions failed to satisfy R.C. 2921.42(C)(4). Finally, it must be noted that appellees failed to introduce any evidence which might have established that the division (C) exemption applied.

IV

{¶ 26} The Franklin County Commissioners and the Franklin County Public Defender also claim that appellant's mandamus action is barred by the

---

3. R.C. 2921.42 provides:

"(C) This section does not apply to a public contract in which a public official, member of his family, or one of his business associates has an interest, when all of the following apply:

"(1) The subject of the public contract is necessary supplies or services for the political subdivision or governmental agency or instrumentality involved;

"(2) The supplies or services are unobtainable elsewhere for the same or lower cost, or are being furnished to the political subdivision or governmental agency or instrumentality as part of a continuing course of dealing established prior to the public official's becoming associated with the political subdivision or governmental agency or instrumentality involved;

"(3) The treatment accorded the political subdivision or governmental agency or instrumentality is either preferential to or the same as that accorded other customers or clients in similar transactions;

"(4) The entire transaction is conducted at arm's length, with full knowledge by the political subdivision or governmental agency or instrumentality involved, of the interest of the public official, member of his family, or business associate, and the public official takes no part in the deliberations or decision of the political subdivision or governmental agency or instrumentality with respect to the public contract."

doctrine of laches. For the following reasons, we find that the equitable defense of laches is not well taken.

**{¶ 27}** Approximately sixteen years elapsed from the time appellant was first employed with the FCPDO to the time that appellant requested that PERS grant her service credit for her FCPDO employment. However, the Franklin County Commissioners and the Franklin County Public Defender lack standing to raise the equitable, affirmative defense of laches because they have unclean hands. See, generally, *Kettering v. Berger* (1982), 4 Ohio App.3d 254, 261-262, 4 OBR 471, 479, 448 N.E.2d 458, 466. See, also, *Patterson v. Blanton* (1996), 109 Ohio App.3d 349, 354, 672 N.E.2d 208, 211 (discussing the doctrine of unclean hands). The minutes from the commission's meetings indicate that the commission and the Franklin County Public Defender knew that they were operating the FCPDO illegally as a "private" unincorporated organization before 1984. Laches is an equitable doctrine and it is fundamental that he who comes into equity must come with clean hands. *Christman v. Christman* (1960), 171 Ohio St. 152, 154, 12 O.O.2d 172, 173, 168 N.E.2d 153, 155. A knowing violation of applicable law would certainly preclude a party from asserting the affirmative, equitable defense of laches.

**{¶ 28}** Assuming, however, that appellees do have standing to raise the issue, the elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277, 1279. Prejudice is not inferred from the mere lapse of time and " 'in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.' " *Stevens v. Natl. City Bank* (1989), 45

Ohio St.3d 276, 285, 544 N.E.2d 612, 621, quoting *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

{¶ 29} The Franklin County Commissioners and Franklin County Public Defender argue that appellant's delay in bringing this action has caused "substantial budgetary prejudice" to the commissioners and that "[i]f [appellant] is successful in this action, all former pre-1984 employees of the FCPDO will also be entitled to PERS contributions for their service with the FCPDO," thereby "open[ing] the floodgates for hundreds of potential claims" and creating an "onerous" financial burden on the commissioners and the county taxpayers. The Franklin County Public Defender further asserts that granting a writ of mandamus to appellant, entitling all pre-1984 FCPDO employees to similar service credit, "will have a devastating economic impact on the existence of the Franklin County Public Defender and will threaten its ability to provide legal services to indigent clients in Franklin County."

{¶ 30} This court, however, rejected similar claims in *State ex rel. N. Olmsted Fire Fighters Assn. v. N. Olmsted* (1992), 64 Ohio St.3d 530, 537, 597 N.E.2d 136, 142, where we stated that "[w]here no evidence of material prejudice is presented, * * * a court of appeals properly rejects laches as a defense." Here, there is an absence of evidence in the record of prejudice, budgetary or otherwise. There is also no evidence or argument that appellant's delay in asserting her rights under PERS prejudiced appellees' ability to defend against her claim. See *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 35, 641 N.E.2d 188, 196.

{¶ 31} Accordingly, laches does not bar appellant's mandamus action.

V

{¶ 32} Two additional questions remain. First, as previously noted, the 1984 enactment of R.C. 120.14(F) authorized the county public defender commission to contract with non-profit organizations to provide county public

defender services. After the FCPDO incorporated, the commission, pursuant to R.C. 120.14(F), contracted with the FCPDO to perform the required services. Did such action in 1984 terminate appellant's continued membership in PERS? It did not.

{¶ 33} R.C. 145.01(A)(2) specifically provides that for purposes of PERS, a "public employee" includes "[a] person who is a member of the public employee retirement system who *continues* to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function." (Emphasis added.) Post incorporation of the FCPDO, appellant continued to act as an attorney providing representation to indigent criminal defendants. Thus, appellant retained her right to be included as a PERS covered employee.

VI

{¶ 34} The last question remaining involves the matter of the amount of the liability of the Franklin County Commissioners. As provided in *State ex rel. Pub. Emp. Retirement Bd. v. Baker* (1959), 169 Ohio St. 499, 9 O.O.2d 1, 160 N.E.2d 262, an employer who fails to deduct public employee retirement benefits is liable for the delinquent contributions to the PERS that the employer failed to make and also liable for those contributions the employer neglected to deduct from the employee's salary. See, also, *Lancaster v. Pub. Emp. Retirement Sys. of Ohio* (1987), 40 Ohio App.3d 135, 138, 532 N.E.2d 144, 147.

{¶ 35} Accordingly, the Franklin County Commissioners are liable for both employer and employee contributions to PERS for appellant for her fourteen years of service with the FCPDO.

Conclusion

{¶ 36} For the foregoing reasons, we reverse the judgment of the court of appeals and grant a writ of mandamus (1) directing the Public Employees Retirement Board to credit appellant for her years of service with the Franklin

14

County Public Defender's Office and (2) directing the Franklin County Commissioners to remit employer and employee contributions to PERS on appellant's behalf.

*Judgment reversed*
*and writ granted.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**LUNDBERG STRATTON, J., dissenting**.

{¶ 37} I disagree with the majority's conclusion that Mallory should be able to collect PERS credit for the period she was employed with the Franklin County Public Defender's Office  ("FCPDO").

### A.   THE BOARD DID NOT ERR IN FAILING TO CONSIDER R.C. CHAPTER 120

{¶ 38} The board's refusal to award Mallory PERS credit was in the form of a letter which stated:

"[T]he work in question was done for a non-profit organization under contract to provide such services.  As such this was not public service for a public employer for purposes of Chapter 145, Ohio Revised Code.  Accordingly, PERS membership was not required.

"The crux of your [Mallory's] position that you were a 'public employee' rests not on the facts, but rather on the legal argument that the commission operations as conducted were unlawful under Chapter 120, Ohio Revised Code. Consequently, individuals acting as public defenders only could be employees of the county. * * * PERS cannot make a legal determination that something is unlawful under statutes which it neither administers nor enforces."

{¶ 39} In finding that the board erred, the majority states:

"What the board was asked to do was to consider *any* and *all* statutes that *might* be pertinent in regard to appellant's status as a public employee. In this regard there is nothing in R.C. 145.01(A) that limits the board to interpreting only those statutes that the board administers. Therefore, the board erred in concluding that it did not have the statutory authority to construe R.C. Chapter 120 to determine whether appellant was a public employee for purposes of PERS during her employment at the FCPDO." (Emphasis added.)

{¶ 40} I disagree. Agencies are created by statute. *Imperial Clevite, Inc. v. Steinbacher* (Mar. 29, 1988), Franklin App. No. 87AP-521, unreported. Thus, an agency's authority is limited to the jurisdiction and powers conferred upon it by the enabling statute. *State ex rel. Clarke v. Cook* (1921), 103 Ohio St. 465, 467, 134 N.E. 655; *Green v. W. Res. Psychiatric Habilitation Ctr.* (1981), 3 Ohio App.3d 218, 3 OBR 248, 444 N.E.2d 442. Generally, an administrative agency or board has no greater power than that expressly conferred upon it by the enabling statute. See *Washington v. Pub. Util. Comm.* (1918), 99 Ohio St. 70, 72, 124 N.E. 46, 47. An agency may also have implied powers, which are limited to those that "may reasonably be necessary to make the express power effective." *State ex rel. A. Bentley & Sons Co. v. Pierce* (1917), 96 Ohio St. 44, 47, 117 N.E. 6, 7. A power will not be implied where the agency has the means to decide the issue within the confines of its express authority. *Green*.

{¶ 41} The implications of the majority's conclusions are far-reaching. The vague, permissive language used by the majority ("*any* and *all* statutes that *might* be pertinent") has implications beyond the facts of this case. It opens the door to allow administrative agencies to interpret statutes or issues that they have no jurisdiction to interpret, that they have no expertise to interpret, and that only marginally touch upon matters traditionally within the province of that agency's jurisdiction. Further, such permissiveness could allow an agency to set a legal precedent on an issue traditionally and more appropriately reserved for a court of

law.  The majority's decision allows an administrative agency to declare an entire non-profit organization established under the Ohio Revised Code illegal.

{¶ 42} In the case at bar, the board followed its grant of authority.  Applying R.C. 145.01 *et seq.* and any applicable Ohio Administrative Code sections, the board determined that the evidence before it indicated that the FCPDO operated as a private entity for purposes of withholding PERS, and that therefore Mallory was not entitled to any PERS credit for the period she was employed with the FCPDO.

{¶ 43} I do not believe that it is within the province of the board to determine whether Kura's actions in hiring the staff and attorneys from the Franklin County Legal Aid and Defender's Society ("Legal Aid") were legal under R.C. 120.01 *et seq.*  While such a determination could ultimately affect the PERS status of the Legal Aid employees, the interpretation of statutes outside R.C. 145.01 *et seq.* is not expressly granted to the board in R.C. Chapter 145.  Further, interpretation of R.C. 120.01 *et seq.* by the board is not reasonably necessary for it to make a determination of whether Mallory was eligible for PERS credit.  The evidence before the board was sufficient to make that determination.  Such a determination would effectively and improperly elevate an administrative agency into a court of law.

{¶ 44} Accordingly, I would find that  the board did not err in failing to interpret the legality of Kura's actions, pursuant to R.C. 120.01 *et seq.*, in forming the FCPDO because there is no express or implied power in R.C. 145.01 *et seq.* that would authorize the board to make such a determination.

### B.  THE FCPDO WAS A PRIVATE ENTITY

1. *R.C. 120.04 Provides the Authority to Contract with a Private Entity*

{¶ 45} The majority determines that the FCPDO's employees, including Mallory, during the period in question, were "public employees" as defined in R.C. 145.01 *et seq.*  In support of this conclusion, the majority cites some of the duties that the FCPDO must perform.  Based on these duties, the majority essentially

determines that the FCPDO is a " 'public office' [because these acts] denote[ ] exercise of certain independent public duties and embod[y] part of the sovereignty of the governmental unit involved," citing *Buian v. Kadlec* (1978), 56 Ohio St.2d 116, 10 O.O.3d 307, 383 N.E.2d 119, and *State ex rel. Mikus v. Hirbe* (1965), 5 Ohio App.2d 307, 34 O.O.2d 490, 215 N.E.2d 430.

{¶ 46} I disagree with this analysis. Neither *Buian* nor *Mikus* construes the term "public employee" for purposes of R.C. 145.01 *et seq.* While I do not disagree with much of the majority's pronouncements on who is or is not a public employee, the fact of the matter is that many of these conclusions simply do not apply to an agency that is able to contract with a private entity. There would be no purpose or value to private contracts if any government function contracted out to private entities would automatically make these workers public employees. To reach its conclusion, the majority seems to find that there can be no valid contracting with a private entity.

{¶ 47} Second and more importantly, the majority's analysis completely ignores that the General Assembly has provided for such private contracting under R.C. 120.04(C)(3). In reviewing the background of this provision, I note that, in 1976, the General Assembly enacted R.C. Chapter 120, the Public Defenders Act, which established the Ohio Public Defender Commission and authorized counties to create county and joint county public defender commissions. 136 Ohio Laws, Part I, 1868. Effective January 8, 1976, pursuant to R.C. 120.13, the Franklin County Commissioners established the Franklin County Public Defender Commission ("commission") to provide legal representation to indigent persons. The commission appointed James Kura as the Franklin County Public Defender. This legislation, R.C. 120.15(C), which enabled the formation of the public defender's office, read:

"The county public defender [Kura] may exercise the rights authorized in division (C) of section 120.04 of the Revised Code." 136 Ohio Laws, Part I, 1877.

18

{¶ 48} R.C. 120.04(C) read:

"The state public defender may:

"* * *

"(3) Make all the necessary arrangements to coordinate the services of the office with any * * * private program established to provide legal representation to indigent persons * * *."  136 Ohio Laws, Part I, 1872.

{¶ 49} R.C. 120.04(C)(3), read together with R.C. 120.15, unambiguously gives the county public defender the option of contracting with a private entity to provide the legal representation that the county public defender is obligated to provide by statute.  The majority fails to acknowledge this point.

{¶ 50} Legal Aid was a non-profit, non-county agency that contracted with the city of Columbus and Franklin County to provide legal defense services.  In 1976, Legal Aid ceased its work in the criminal defense area.  Under the authority of R.C. Chapter 120, Kura then hired the support personnel and attorneys from Legal Aid to staff the FCPDO.

{¶ 51} Kura and the commission intended for the FCPDO to be a non-county entity.  The FCPDO, in fact, operated as if it were a non-county, unincorporated association whose employees were not public employees for purposes of the PERS.  The FCPDO staff paid Social Security taxes on their wages, but made no contributions to PERS.

### 2. *The Effect of R.C. 120.14(F)*

{¶ 52} In 1984, the Ohio Public Defender Act was amended to add R.C. 120.14(F).  R.C. 120.14(F) specifically provided that the commission may contract with the State Public Defender or any non-profit organization to provide legal representation to indigent persons.  On December 31, 1984, the Franklin County Public Defender filed articles of incorporation with the Secretary of State to become a non-profit organization.

{¶ 53} However, the majority cites Kura's actions in advocating the 1984 amendment to R.C. Chapter 120 as his efforts to "legalize" the privatization of the FCPDO. The mere fact that Kura sought to explicitly formalize the status of the arrangement merely demonstrates his diligence in seeking to clarify the FCPDO's ability to contract out to private entities for legal services. I would find that the 1984 enactment of section (F) to R.C. 120.14 merely reaffirmed that the FCPDO can contract with private organizations under the authority previously established by R.C. 120.14(C)(3).

### 3. *A Legal Contract Existed*

{¶ 54} The majority finds that "[t]he record before us is devoid of any evidence of a contract, written or oral, between Kura and the FCPDO." The majority's analysis fails to take into account that contracts may be implied in fact.

{¶ 55} If a contract is implied in fact, there is no express agreement. Therefore, the meeting of the minds is proven by the "surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6-7, 540 N.E.2d 257, 263. Additionally, a contract is created by the obligation of payment for services:

"In its legal sense, the word 'contract' includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act." *Terex Corp. v. Grim Welding Co.* (1989), 58 Ohio App.3d 80, 82, 568 N.E.2d 739, 741.

{¶ 56} The parties stipulated that, "[i]n 1976, the Franklin County Public Defender Commission appointed James Kura as the Franklin County Public Defender. Following his appointment, James Kura hired a staff of attorneys and other support personnel from [Legal Aid[4]] to form the FCPDO." Kura set up the

---

4. It is undisputed that Legal Aid was a private entity.

FCPDO as a non-county, non-public entity as evidenced by the fact that the commission, through Kura, on behalf of the FCPDO, submitted an SS-4 application for an employer identification number that identified it as an unincorporated association; the FCPDO sought tax-exempt status under Section 501(c)(3), Title 26, U.S.Code as a charitable organization; Social Security tax (rather than PERS) was withheld from the staff's pay; sick and health benefits differed from other county employees, and the Franklin County Commissioners did not carry the FCPDO employees on the county payroll.

{¶ 57} Further, the minutes of the June 29, 1976 meeting of the Franklin County Public Defender Commission reflect a motion passed approving of the FCPDO as a non-profit corporation. In addition, a National Labor Relations Board Region 9 decision, No. 9-RC-13239, dated March 25, 1980, recognized that the FCPDO was a "non-profit unincorporated association." Finally, Articles of Incorporation were filed for the Franklin County Public Defender on December 31, 1984, pursuant to the then newly enacted R.C. 120.14(F).

{¶ 58} These circumstances taken together reveal Kura's intention to hire the staff and attorneys from Legal Aid to create a new entity to fulfill the commission's duty to provide legal representation to indigents originally as an unincorporated association and later as a non-profit organization separate and apart from the county. *Legros*.

{¶ 59} In fact, there is no evidence that the FCPDO ever acted as a public employer. While there is no written contract, there is substantial written documentation and other testimony in the record that the Franklin County Commissioners, as well as the Franklin County Public Defender Commission, intended to establish a private entity and transfer all the rights, duties, and responsibilities of the commission to that entity. All of the evidence cited above in terms of tax filings, wage and tax statements, minutes of the Franklin County Public Defender Commission meetings, payroll of the Franklin County Commissioners,

and other materials amply support that a contract was intended between Kura and Legal Aid to form the FCPDO. This evidence also goes to support the board's denial of Mallory's PERS credit.

{¶ 60} Therefore, I would find that there is some evidence that Mallory's employer, the FCPDO, was a private entity for purposes of PERS during the time period in question. See *State ex rel. Schwaben v. School Emp. Retirement Sys.* (1996), 76 Ohio St.3d 280, 667 N.E.2d 398. Accordingly, I would find that the board did not abuse its discretion in holding that Mallory was not a public employee during the time in question for purposes of granting PERS credit.

### 4. *R.C. 2921.42*

{¶ 61} The majority also claims that any contract would be invalid under R.C. 2921.42 involving a public official's unlawful interest in a contract. I disagree. I would find that R.C. 2921.42 would not bar Kura's "contract" with the staff and attorneys of Legal Aid to serve as employees for the FCPDO.

{¶ 62} R.C. 2921.42(C) provides that under certain circumstances, a public official may have an interest in a public contract. R.C. 2921.42(C) allows a public official to have an interest in a contract where:

"(1) The subject of the public contract is necessary supplies or services for * * * the agency * * * involved; (2) The supplies or services are unobtainable elsewhere for the same or lower cost * * *; (3) The treatment accorded the * * * agency * * * is either preferential to or the same as that accorded other customers * * *; (4) The entire transaction is conducted at arm's length, with full knowledge by the * * * agency * * * involved * * *."

{¶ 63} I would find that all four of these criteria are satisfied in this case, thereby allowing Kura to hire the staff and attorneys from Legal Aid. The legal services provided by the FCPDO are necessary to provide legal representation to indigent defendants. The salaries paid to the attorneys at the FCPDO are less than the cost of comparable representation from private firms. The Franklin County

Public Defender Commission and the Franklin County Commissioners had full knowledge that Kura hired attorneys from Legal Aid and, in fact, approved of the same by their actions in support of the FCPDO as evidenced by the discussions at the commission's meetings. In addition, Kura possessed the authority under R.C. 120.04(C) and 120.15(C), which, when read together, specifically grant a county public defender the power to contract for a "private program." In 1984, R.C. 120.14(F) granted this right directly to Kura. Kura did so with the unanimous consent of the commission. Kura also served as the director of the FCPDO in his official capacity as a representative of the commission and therefore was permitted to serve in both roles as a representative of his agency. Ohio Ethics Comm. Advisory Ops. Nos. 82-004, 83-010, 84-001, and 96-005.

{¶ 64} Even assuming *arguendo* that the elements of R.C. 2921.42(C) were not satisfied, Kura's alleged illegal involvement in the contract would not render the contract void. Nowhere in R.C. 2921.42 does it indicate that improper conduct by the culpable party should render the entire contract void. The statute deals only with the *criminal* liability of a public official having an unlawful interest in a contract. Kura's own alleged conflict would not render the formation of an entire unincorporated association or non-profit corporation invalid.[5]

---

5. Cf. *Walsh v. Bollas* (1992), 82 Ohio App.3d 588, 612 N.E.2d 1252. In *Walsh,* the court held that the public employee's improper conduct pursuant to R.C. 2921.42 voided the contract. The court in *Walsh* held that a sheriff's hiring of his son-in-law was an illegal interest in a public employment contract. Thus, since there was a direct relationship between the contract and the conflict, and there was a benefit to a family member, the trial court determined that the contract was void because it violated public policy.

The case at bar is distinguishable from *Walsh*. Here there is no evidence of any actual harm as a result of the contract. The FCPDO attorneys and staff had a strong desire to remain separate from government employees for several reasons. The FCPDO attorneys and staff wanted to appear more credible to their clients (indigent criminal defendants), who were suspicious of the government, by operating under a private organization rather than as an arm of the government. The employees also desired health, sick leave, and vacation benefits other than those offered to public employees. Additional reasons cited by the commission members were the desire to be separately represented in any lawsuit by a private attorney, rather than the prosecutor's office, their natural adversary, and their desire to keep their political affiliation private so as not to affect their employment. There is no evidence that the FCPDO was formed for any personal benefit of Kura or

## C. CONCLUSION

**{¶ 65}** The board has the specific duty under R.C. 145.04 to determine whether a person is a "public employee." R.C. 145.01(A) states, "In all cases of doubt, the public employees retirement board shall determine whether any person is a public employee, and that decision is final."

**{¶ 66}** The standard of review of an administrative decision is whether the administrative body abused its discretion. See *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio* (1990), 49 Ohio St.3d 224, 225, 551 N.E.2d 989, 992. If there is "some evidence" to support the board's decision, then there is no abuse of discretion. *Id.*

**{¶ 67}** I would find that the FCPDO was a legally authorized private entity pursuant to R.C. 120.04(C)(3) and 120.14(F). I would also find that the evidence clearly establishes that the FCPDO *was* a private entity. Finally, Mallory paid into the Social Security fund and will receive the full benefits of her contributions upon retirement.

**{¶ 68}** In conclusion, I would find that the board did not abuse its discretion. Accordingly, I would have denied the writ of mandamus. Therefore, I respectfully dissent.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

_____

his friends or relatives. Therefore, I would find that there is no public policy reason to void the entire contract due to Kura's alleged conflict, nor is there any authority to do so under R.C. 2921.42.

24