DECISION
{¶ 1} Relator, Omia Nadine Van Dyke, has filed an original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Public Employees Retirement Board ("PERB"), to grant her request for membership status and service credits in Public Employees Retirement System ("PERS") for the tenure of her employment in the Franklin County Public Defenders Office ("FCPDO") for the time period of April 10, 1986 to August 21, 1991. She also seeks a writ directing respondent, Board of Commissioners of Franklin County, Ohio ("Franklin County Commissioners"), to make the required contributions on her behalf for the same time period.
{¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals. On January 11, 2002, the magistrate rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that this court should deny the requested writ, as relator had not demonstrated a clear legal right to the relief she sought. Relator filed objections to the decision, and respondents filed memoranda in opposition to relator's objections. For the reasons that follow, we adopt the findings of fact and reproduce them here, reject the conclusions of law, and grant the requested writ.
{¶ 3} "Findings of Fact:
{¶ 4} "1. In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defender Act.
{¶ 5} "2. The Franklin County Commissioners established the Franklin County Public Defender Commission to provide legal representation to indigent persons in the courts of the county.
{¶ 6} "3. James Kura was appointed Franklin County Public Defender and he hired attorneys and support personnel to form the FCPDO.
{¶ 7} "4. The FCPDO operated as a nonpublic, unincorporated association whose employees paid Social Security taxes on their salaries. As such, the employees of the FCPDO were not treated as "public employees" for purposes of PERS.
{¶ 8} "5. Relator began working for the FCPDO on February 16, 1982, as a legal intern. Relator was subsequently promoted to staff attorney.
{¶ 9} "6. In 1984, the General Assembly enacted R.C. 120.14(F) to specifically authorize counties to contract with nonprofit organizations to provide representation to indigent criminal defendants. Thereafter, the FCPDO was incorporated as a nonprofit corporation. Respondents Franklin County Commissioners, contracted with the Franklin County Public Defender Commission to provide legal representation for indigent and criminal defendants in Franklin County, and the commission subcontracted with the newly incorporated FCPDO to provide those services.
{¶ 10} "7. As a staff attorney for the FCPDO, relator's duties were to represent indigent persons charged with felonies, serious misdemeanors or civil commitments.
{¶ 11} "8. Relator resigned her position with the FCPDO effective November 22, 1985.
{¶ 12} "9. Relator became employed by the Franklin County Court of Common Pleas, Division of Domestic Relations, Bureau of Support, as a staff attorney as of November 21, 1985. The function of the bureau is to enforce judicial support orders through civil and contempt proceedings. Relator's employment with the bureau was from November 21, 1985 to March 21, 1986.
{¶ 13} "10. Relator subsequently resigned her position with the bureau of support and was reemployed by the FCPDO on April 10, 1986. Relator again served as a staff attorney until she resigned her position on August 21, 1991.
{¶ 14} "11. From August 26, 1991 to the present, relator has been employed by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, serving as a magistrate.
{¶ 15} "12. At no time during her employment with the FCPDO were contributions made to PERS on her behalf. However, while employed by the bureau of support and while serving as a magistrate, contributions were made to PERS on relator's behalf.
{¶ 16} "13. On June 24, 1998, the Supreme Court of Ohio decided State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998),82 Ohio St.3d 235. In Mallory, the court concluded that the FCPDO was a county agency and, as such, a "public office" prior to its incorporation as a nonprofit corporation in 1984. As a consequence, the court held that all employees hired by the FCPDO prior to the 1984 incorporation were "public employees" within the meaning of R.C. 145.01 and were entitled to membership in PERS, including the mandatory contributions and service credits incident thereto.
{¶ 17} "14. Following the release of Mallory, the county commissioners certified public service credits and made contributions to PERS on behalf of employees hired by the FCPDO prior to the 1984 incorporation.
{¶ 18} "15. The county commissioners limited relator's service credits and contributions to the time period of February 16, 1982 to November 22, 1985.
{¶ 19} "16. Relator challenged the county commissioners' failure to certify service credits for her service as a staff attorney with the FCPDO for the April 10, 1986 to August 21, 1991 time frame.
{¶ 20} "17. By letter dated September 20, 2000, relator was notified that she was not eligible for PERS membership for the time period of April 10, 1986 through August 26, 1991 because she had resigned her position with the FCPDO in 1985 and then was rehired in 1986. As such, she did not qualify as a carry-over employee pursuant to R.C.145.01(A)(2) for that time period and she was not entitled to coverage.
{¶ 21} "18. Relator requested that a staff determination be made in accordance with Ohio Adm. Code Section 145-1-08 regarding the issues of her membership in PERS for the time period of April 10, 1986 through August 21, 1991.
{¶ 22} "19. By letter dated April 30, 2001, relator was informed that she was not considered a public employee during this time period and, therefore, she was not eligible for PERS membership and service credits in that time period. Specifically, relator was denied membership as follows:
{¶ 23} " `There is no dispute that in the present case Ms. Van Dyke was entitled to membership and service credit for the 1982-85 period. She was employed by FCPDO prior to 1984, and then continuously until November, 1985. Unlike Mallory, who resigned from FCPDO to become employed by the state, Ms. Van Dyke resigned from FCPDO for a position with Franklin County.
{¶ 24} " `In order for Ms. Van Dyke to obtain service credit for the 1986-1991 period the requirements of R.C. 145.01(A)(2) must be met. This provision requires that a person who is a PERS member " continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function."
{¶ 25} " `The contractor in this case is the FCPDO and the publicly operated function was the provision of legal representation to indigent criminal defendants. When Ms. Van Dyke resigned her position with FCPDO in 1985, she left the contractor and took a position with the Court of Common Pleas, Division of Domestic Relations. She did this after FCPDO became an incorporated entity which contracted with the county's Public Defender Commission. When she returned to FCPDO in 1986 she returned as a new employee. She had resigned from FCPDO so there was no continuous employment. Moreover, she had not performed services to represent indigent criminal defendants while with the Court. Thus, when she returned to the FCPDO she was not a carryover employee. The conversion to a contractor had "occurred" two years earlier in 1984, and she did not continue to perform duties during the interim period.
{¶ 26} " `Ms. Van Dyke attempts to avoid both the obvious operation, and language, of the statute by claiming her position as an attorney qualifies under R.C. 145.02(A)(2).
{¶ 27} " `This expansive interpretation ignores the purpose of the statute. Employees of private employers are not eligible for PERS coverage. See, R.C. 145.03 and 145.01. Public employees whose public employers outsource the work and employees to private contractors, become private employees. But for R.C. 145.01(A)(2) these employees would lose their public retirement benefits through no fault of their own. However, when one of these carryover employees leaves employment under the private contractor, the protection of the statute ends. If they return to the private contractor they do so as a new hire and are subject solely to those retirement benefits provided by the contractor such as Social Security and any other plan offered by the contractor. See, e.g., Atty. Gen. Op. 72-055.
{¶ 28} " `The Mallory decision does not explicitly address the issue before PERS. It implicitly accepts the limitations set out by R.C. 145.01(A)(2). * * *'
{¶ 29} "20. Relator filed an appeal to the PERS board on May 30, 2001.
{¶ 30} "21. By letter dated June 21, 2001, the PERS board voted to uphold the staff's determination that relator's service with the FCPDO for the period of April 10, 1986 through August 21, 1991, is not covered for purposes of PERS on the basis that relator was not a public employee during that time period.
{¶ 31} "22. Thereafter, relator filed the instant mandamus action in this court."
{¶ 32} Relator objects to the magistrate's decision on the grounds that the magistrate failed to properly construe R.C. 145.01 and that the magistrate erred in limiting the evidence to documents submitted to PERB.
{¶ 33} As a framework for our analysis, we note that in Mallory v. Pub. Emp. Retirement Bd. (1988), 82 Ohio St.3d 235, the Supreme Court of Ohio stated that "pension provisions like R.C. 145.01(A) must be liberally construed in favor of the public employees and their dependents who the statutes were designed to protect." Mallory at 240. As the Ohio Supreme Court discussed in Mallory, R.C. 145.01(A)(2) specifically provides that for purposes of PERS, a "public employee" includes "[a] person who is a member of the public employee retirement system who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function." Thus, pursuant to Mallory, and prior to 1984, relator was a public employee working as an attorney for the county litigating on behalf of indigent persons. After the incorporation of the FCPDO and pursuant to R.C. 145.01(A)(2), relator remained a public employee, continuing to serve as an attorney for the FCPDO. Mallory at 245. For four months in 1985 she continued to work as a public employee serving as an attorney and performing similar duties litigating on behalf of the county bureau of support. Relator then returned to the FCPDO and continued to perform the same duties she had previously performed for that agency. Thus, relator continued in an unbroken chain of service as an attorney for the county and a public employee when she returned to the FCPDO and resumed her duties as a staff attorney. To this day, relator has never stopped working as a public employee for Franklin County. Thus, we conclude that relator falls within the definition of a public employee pursuant to R.C. 145.01(A), and consequently is entitled to membership status and service credits in PERS for the time period of April 10, 1986 to August 21, 1991.
{¶ 34} Because we are sustaining relator's first objection to the magistrate's decision and are rejecting the magistrate's conclusions of law, relator's second objection is moot, as is relator's motion to set aside the magistrate's November 8, 2001 order.
{¶ 35} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and we adopt those findings of fact as our own. This court sustains relator's first objection to the decision of the magistrate, and rejects her conclusions of law, concluding instead that relator has demonstrated a clear legal right to the relief requested. In accordance with this conclusion, the requested writ is granted.
Relator's first objection is sustained, the second objection is moot as is the motion to set aside Magistrate's order; writ of mandamus granted.
TYACK, P.J., and BRYANT, J., concur.
 APPENDIX A IN MANDAMUS
{¶ 36} Relator, Omia Nadine Van Dyke, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Public Employees Retirement Board ("PERS board") to grant her request for membership status and service credits in the Public Employees Retirement System ("PERS") for the tenure of her employment in the Franklin County Public Defender's Office ("FCPDO") for the time period of April 10, 1986 to August 21, 1991.
Findings of Fact:
{¶ 37} In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defender Act.
{¶ 38} 2. The Franklin County Commissioners established the Franklin County Public Defender Commission to provide legal representation to indigent persons in the courts of the county.
{¶ 39} 3. James Kura was appointed Franklin County Public Defender and he hired attorneys and support personnel to form the FCPDO.
{¶ 40} 4. The FCPDO operated as a nonpublic, unincorporated association whose employees paid Social Security taxes on their salaries. As such, the employees of the FCPDO were not treated as "public employees" for purposes of PERS.
{¶ 41} 5. Relator began working for the FCPDO on February 16, 1982, as a legal intern. Relator was subsequently promoted to staff attorney.
{¶ 42} 6. In 1984, the General Assembly enacted R.C. 120.14(F) to specifically authorize counties to contract with nonprofit organizations to provide representation to indigent criminal defendants. Thereafter, the FCPDO was incorporated as a nonprofit corporation. Respondents Franklin County Commissioners, contracted with the Franklin County Public Defender Commission to provide legal representation for indigent and criminal defendants in Franklin County, and the commission subcontracted with the newly incorporated FCPDO to provide those services.
{¶ 43} 7. As a staff attorney for the FCPDO, relator's duties were to represent indigent persons charged with felonies, serious misdemeanors or civil commitments.
{¶ 44} 8. Relator resigned her position with the FCPDO effective November 22, 1985.
{¶ 45} 9. Relator became employed by the Franklin County Court of Common Pleas, Division of Domestic Relations, Bureau of Support, as a staff attorney as of November 21, 1985. The function of the bureau is to enforce judicial support orders through civil and contempt proceedings. Relator's employment with the bureau was from November 21, 1985 to March 21, 1986.
{¶ 46} 10. Relator subsequently resigned her position with the bureau of support and was reemployed by the FCPDO on April 10, 1986. Relator again served as a staff attorney until she resigned her position on August 21, 1991.
{¶ 47} 11. From August 26, 1991 to the present, relator has been employed by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, serving as a magistrate.
{¶ 48} 12. At no time during her employment with the FCPDO were contributions made to PERS on her behalf. However, while employed by the bureau of support and while serving as a magistrate, contributions were made to PERS on relator's behalf.
{¶ 49} 13. On June 24, 1998, the Supreme Court of Ohio decided State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998),82 Ohio St.3d 235. In Mallory, the court concluded that the FCPDO was a county agency and, as such, a "public office" prior to its incorporation as a nonprofit corporation in 1984. As a consequence, the court held that all employees hired by the FCPDO prior to the 1984 incorporation were "public employees" within the meaning of R.C. 145.01 and were entitled to membership in PERS, including the mandatory contributions and service credits incident thereto.
{¶ 50} 14. Following the release of Mallory, the county commissioners certified public service credits and made contributions to PERS on behalf of employees hired by the FCPDO prior to the 1984 incorporation.
{¶ 51} 15. The county commissioners limited relator's service credits and contributions to the time period of February 16, 1982 to November 22, 1985.
{¶ 52} 16. Relator challenged the county commissioners' failure to certify service credits for her service as a staff attorney with the FCPDO for the April 10, 1986 to August 21, 1991 time frame.
{¶ 53} 17. By letter dated September 20, 2000, relator was notified that she was not eligible for PERS membership for the time period of April 10, 1986 through August 26, 1991 because she had resigned her position with the FCPDO in 1985 and then was rehired in 1986. As such, she did not qualify as a carry-over employee pursuant to R.C.145.01(A)(2) for that time period and she was not entitled to coverage.
{¶ 54} 18. Relator requested that a staff determination be made in accordance with Ohio Adm. Code Section 145-1-08 regarding the issues of her membership in PERS for the time period of April 10, 1986 through August 21, 1991.
{¶ 55} 19. By letter dated April 30, 2001, relator was informed that she was not considered a public employee during this time period and, therefore, she was not eligible for PERS membership and service credits in that time period. Specifically, relator was denied membership as follows:
{¶ 56} "There is no dispute that in the present case Ms. Van Dyke was entitled to membership and service credit for the 1982-85 period. She was employed by FCPDO prior to 1984, and then continuously until November, 1985. Unlike Mallory, who resigned from FCPDO to become employed by the state, Ms. Van Dyke resigned from FCPDO for a position with Franklin County.
{¶ 57} "In order for Ms. Van Dyke to obtain service credit for the 1986-1991 period the requirements of R.C. 145.01(A)(2) must be met. This provision requires that a person who is a PERS member ` continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function.'
{¶ 58} "The contractor in this case is the FCPDO and the publicly operated function was the provision of legal representation to indigent criminal defendants. When Ms. Van Dyke resigned her position with FCPDO in 1985, she left the contractor and took a position with the Court of Common Pleas, Division of Domestic Relations. She did this after FCPDO became an incorporated entity which contracted with the county's Public Defender Commission. When she returned to FCPDO in 1986 she returned as a new employee. She had resigned from FCPDO so there was no continuous employment. Moreover, she had not performed services to represent indigent criminal defendants while with the Court. Thus, when she returned to the FCPDO she was not a carryover employee. The conversion to a contractor had "occurred" two years earlier in 1984, and she did not continue to perform duties during the interim period.
{¶ 59} "Ms. Van Dyke attempts to avoid both the obvious operation, and language, of the statute by claiming her position as an attorney qualifies under R.C. 145.02(A)(2).
{¶ 60} "This expansive interpretation ignores the purpose of the statute. Employees of private employers are not eligible for PERS coverage. See, R.C. 145.03 and 145.01. Public employees whose public employers outsource the work and employees to private contractors, become private employees. But for R.C. 145.01(A)(2) these employees would lose their public retirement benefits through no fault of their own. However, when one of these carryover employees leaves employment under the private contractor, the protection of the statute ends. If they return to the private contractor they do so as a new hire and are subject solely to those retirement benefits provided by the contractor such as Social Security and any other plan offered by the contractor. See, e.g., Atty. Gen. Op. 72-055.
{¶ 61} "The Mallory decision does not explicitly address the issue before PERS. It implicitly accepts the limitations set out by R.C.145.01(A)(2). * * *"
{¶ 62} 20. Relator filed an appeal to the PERS board on May 30, 2001.
{¶ 63} 21. By letter dated June 21, 2001, the PERS board voted to uphold the staff's determination that relator's service with the FCPDO for the period of April 10, 1986 through August 21, 1991, is not covered for purposes of PERS on the basis that relator was not a public employee during that time period.
{¶ 64} 22. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
{¶ 65} It is undisputed that an action in mandamus is the appropriate remedy to determine relator's claimed entitlement to PERS service credit. State ex rel. Ryan v. State Teachers Retirement Sys. (1994), 71 Ohio St.3d 362; McAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio (1994), 93 Ohio App.3d 353; R.C. 145.01(A). The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondents are under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. To be entitled to the requested writ of mandamus, relator must establish that the PERS board abused its discretion by denying her request for PERS service credit. The PERS board abused its discretion if it acted in an unreasonable, arbitrary, or unconscionable manner. Mallory at 239.
{¶ 66} In Mallory, the court concluded that, prior to its 1984 incorporation, the FCPDO was a county agency staffed by county employees, even though the FCPDO did not consider itself to be a county agency staffed by county employees. The court reached this conclusion after analyzing the statutory authority and the duties of the FCPDO and its employees. The court concluded that the appellant in Mallory fell within the definition of "public employee" as such is defined in R.C.145.01(A) and consequently, was entitled to membership in PERS when she was employed at FCPDO.
{¶ 67} R.C. 145.01(A)(1) defines "public employee" for purposes of compulsory membership in PERS to include the following:
{¶ 68} "Any person holding an office, not elective, under the state or any county, municipal corporation, * * * of board, bureau, commission, * * * or administrative body as the same are, or have been, created by action of the general assembly or by the legislative authority of any of the units of local government named in this division, or employed and paid in whole or in part by the state or any of the authorities named in this division * * *."
{¶ 69} Based upon the above, the court concluded that the appellant in Mallory was a public employee covered by PERS during her employment with the FCPDO. Likewise, in the present case, the PERS board concluded that relator was a public employee covered by PERS during her employment with the FCPDO from February 16, 1982 through November 22, 1985, when she resigned.
{¶ 70} In Mallory, the court addressed the issue of whether or not the 1984 enactment of R.C. 120.14(F), which authorized the county public defender commission to contract with nonprofit organizations to provide county public defender services, terminated appellant's continued membership in PERS. The court concluded that the 1984 enactment of R.C.120.14(F) and subsequent incorporation of the FCPDO did not terminate appellant's continued membership in PERS. As its rationale, the court stated as follows:
{¶ 71} "R.C. 145.01(A)(2) specifically provides that for purposes of PERS, a `public employee' includes `[a] person who is a member of the public employee retirement system who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function.' (Emphasis added.) Post incorporation of the FCPDO, appellant continued to act as an attorney providing representation to indigent criminal defendants. Thus, appellant retained her right to be included as a PERS covered employee." (Id. at 245.)
{¶ 72} Just as in Mallory, the appellant was still considered to be a "public employee" during her tenure with the FCPDO following its 1984 incorporation, the relator in the present case continued to be a "public employee" during her tenure with the FCPDO after its 1984 incorporation. However, because relator terminated her employment with the FCPDO in November 1985 and then was later rehired by the FCPDO in 1986, the PERS board was faced with determining whether she continued to qualify as a "public employee" when she subsequently returned in 1986.
{¶ 73} Before the PERS board, relator argued that she qualified as a "public employee" for purposes of R.C. 145.01(A)(2) because she continued to perform the same or similar duties both as a staff attorney for the FCPDO and as a staff attorney for the bureau of support. The PERS board disagreed with relator's argument that her designation as a "staff attorney" for both offices was sufficient to satisfy the requirement of same or similar duties. Instead, the PERS board noted that, as a staff attorney for the FCPDO, relator's duty was to provide legal representation to criminal defendants. However, while she was working for the bureau of support, her duties were to enforce judicial support orders through civil contempt proceedings. The PERS board concluded that, had relator not terminated her employment with the FCPDO in 1985, and had she continued to be employed by the FCPDO, she would have remained a "carry over" employee who was entitled, pursuant to R.C.145.01(A)(2), to continue to participate in the PERS system. However, when she resigned her position with the FCPDO, the PERS board concluded that her "carry over employee" status terminated with her resignation. Relator attempted to argue that since she left one county agency (FCPDO) for another county agency (bureau of support), she continued to be a "public employee" for purposes of PERS and never lost her status as such. In essence, relator's argument is correct inasmuch as she did qualify for PERS service credits while serving as a staff attorney for the bureau of support. However, that is not dispositive of whether or not the PERS board abused its discretion in finding that when relator was rehired by the FCPDO in 1986 following the enactment of R.C. 120.15(F) and the incorporation of the FCPDO, relator did not qualify as a "public employee" for purposes of PERS service credits.
{¶ 74} Although the result appears harsh, relator has not shown that the PERS board abused its discretion in finding that she did not qualify as a "public employee" for purposes of membership in PERS when she was rehired by the FCPDO in 1986. Following the enactment of R.C.120.14(F) and the incorporation of the FCPDO in 1984, all employees who were hired after 1984 were specifically not considered "public employees" for purposes of membership in PERS. Relator is being treated the same as every employee hired by the FCPDO after its 1984 incorporation. Simply because she had previously been an employee of the FCPDO prior to its incorporation and thus previously qualified for membership in PERS, it is not automatic that she be considered to be a "public employee" after she resigned and was later rehired following its incorporation. Simply put, relator has not established that the PERS board abused its discretion when it determined that she had ceased being a carry-over employee who was considered to be a "public employee" with the FCPDO when she terminated her employment with the FCPDO. As such, this magistrate concludes that relator has not demonstrated that the PERS board has a clear legal duty to grant her the requested relief.
{¶ 75} In her brief, relator contends that she was denied her due process rights when the PERS board failed to conduct a quasi-judicial hearing, failed to take testimony, failed to render findings of fact and an explanation of its decision denying her request for membership and service credits in PERS. However, relator failed to plead in either her complaint or her amended complaint that she was entitled to a writ of mandamus with respect to the PERS board's hearing process. Although relator had filed a motion asking permission to file affidavits with this court or present testimony in a hearing before this court concerning the arguments made to the board, this magistrate denied that motion on grounds that the only evidence which was properly before this court was the evidence which was before the PERS board when it rendered its determination. Based upon relator's complaint, the only issue raised was whether the PERS board had abused its discretion in denying her service credits for the time period at issue and her complaint did not raise the issue of whether or not the hearing process before the PERS board was proper.
{¶ 76} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the PERS board abused its discretion in denying her membership service credits in PERS for the time period of April 10, 1986 through August 21, 1991, as she has not demonstrated a clear legal right to that relief. As such, this court should deny relator's request for a writ of mandamus.