THE STATE EX REL. VAN DYKE, APPELLEE AND CROSS-APPELLANT,
*v.* PUBLIC EMPLOYEES RETIREMENT BOARD ET AL.,
APPELLANTS AND CROSS-APPELLEES.

[Cite as *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.,* 99 Ohio St.3d 430, 2003-Ohio-4123.]

(No. 2002–1803—Submitted June 3, 2003—Decided August 20, 2003.)

---

Per Curiam.

{¶ 1} In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defenders Act, which established the Ohio Public Defender Commission and authorized counties to create county and joint-county public defender commissions. Am.Sub.H.B. No. 164, 136 Ohio Laws, Part I, 1868. Pursuant to these provisions, appellant and cross-appellee Franklin County Board of Commissioners established the Franklin County Public Defender Commission to provide legal representation to indigent persons as required by law, and the commission appointed the Franklin County Public Defender.

{¶ 2} The public defender then hired attorneys and support personnel to form the Franklin County Public Defender's Office ("FCPDO"). The FCPDO operated as if it were a private, unincorporated association, and both FCPDO and its employees paid Social Security taxes on their wages.

{¶ 3} In February 1982, appellee and cross-appellant, Omia Nadine Van Dyke, began working for FCPDO as a legal intern. In November 1983, upon her admission to the Ohio bar, FCPDO promoted Van Dyke to the position of staff attorney. In that position, Van Dyke's duties included representing indigent persons charged with felonies or serious misdemeanors and representing indigent persons in civil-commitment proceedings.

{¶ 4} In 1984, the General Assembly enacted R.C. 120.14(F), which authorized county and joint-county public defender commissions to contract with nonprofit organizations to provide representation to indigent criminal defendants. Am.Sub. S.B. No. 271, 140 Ohio Laws, Part I, 949, 956–957. In December 1984, FCPDO incorporated as a nonprofit corporation. The Franklin County Public Defender Commission then contracted with the Franklin County Board of Commissioners and the city of Columbus to provide legal representation for indigent criminal defendants in Franklin County, and the commission subcontracted with the newly incorporated FCPDO to provide these services.

{¶ 5} In November 1985, Van Dyke resigned her position with FCPDO and began working as a staff attorney in the Bureau of Support of the Franklin County Court of Common Pleas, Division of Domestic Relations. Van Dyke's duties at the bureau of support included enforcing support orders by civil contempt and other civil proceedings.

{¶ 6} In March 1986, Van Dyke resigned her position with the bureau of support. In her letter of resignation, Van Dyke specified that she missed the work that her job with the bureau of support did not provide:

{¶ 7} "I cannot deny that I miss terribly the trial work and the one to one representation of clients that this job does not afford."

{¶ 8} In April 1986, FCPDO rehired Van Dyke as a staff attorney, and she remained at that job until she resigned in August 1991 and was appointed to her

current position as a magistrate for the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

{¶ 9} In June 1998, we granted a writ of mandamus directing appellant Public Employees Retirement Board ("PERB") to credit a former FCPDO employee for her years of service as an attorney and law clerk with FCPDO from 1978 to 1980 and from 1982 to 1994. *State ex rel. Mallory v. Pub. Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 694 N.E.2d 1356. We held that pre–1984 FCPDO attorneys were public employees during their employment with FCPDO. Id. at 241, 694 N.E.2d 1356. We further held that after the 1984 enactment of R.C. 120.14(F) and the incorporation of FCPDO as a nonprofit organization, FCPDO attorneys who continued to represent indigent criminal defendants retained their rights to service credit with the Public Employees Retirement System ("PERS") under R.C. 145.01(A)(2). Id. at 245, 694 N.E.2d 1356.

{¶ 10} Following *Mallory*, PERS credited Van Dyke with her years of service with FCPDO from February 1982 to November 1985. PERS also credited Van Dyke for her bureau-of-support employment (November 1985 to March 1986) and her juvenile-court employment (August 1991 to present). PERS, however, refused to give Van Dyke service credit for her employment with FCPDO from April 1986 to August 1991.

{¶ 11} In April 2000, Van Dyke requested that PERS grant her service credit for the period from April 1986 to August 1991. In September 2000, PERS denied Van Dyke's request for credit because she did not qualify under R.C. 145.01(A)(2). In January 2001, Van Dyke requested a PERS staff determination concerning her second period of employment with FCPDO.

{¶ 12} In April 2001, PERS rendered a final staff determination in which it denied Van Dyke's request for service credit for the subject period. PERS determined that Van Dyke was not a public employee and consequently was not entitled to PERS service credit during the period:

{¶ 13} "Employees of private employers are not eligible for PERS coverage. Public employees whose public employers outsource the work and employees to private contractors, become private employees. But for R.C. 145.01(A)(2) these employees would lose their public retirement benefits through no fault of their own. However, when one of these carryover employees leaves employment under the private contractor, the protection of the statute ends. If they return to the private contractor they do so as a new hire and are subject solely to those retirement benefits provided by the contractor such as Social Security and any other plan offered by the contractor." (Citations omitted.)

{¶ 14} Van Dyke appealed the staff determination to PERB. In June 2001, PERB upheld the determination that Van Dyke was not a public employee for

PERS purposes for her employment with FCPDO from April 1986 to August 1991.

{¶ 15} In July 2001, Van Dyke filed a complaint in the Court of Appeals for Franklin County for a writ of mandamus to compel appellant and cross-appellee PERB to grant her PERS membership status and service credit for her FCPDO employment from April 1986 to August 1991. Van Dyke also sought to order the Franklin County Board of Commissioners to remit the employer and employee contributions to PERS for credit to her retirement account. In her amended complaint, Van Dyke alleged that she was entitled to mandamus relief because PERB had abused its discretion by denying her request for PERS membership and service credit for her April 1986 to August 1991 FCPDO employment. Van Dyke further claimed that the Franklin County Board of Commissioners abused its discretion by failing to make employer contributions and deduct employee contributions for this period. Van Dyke alleged entitlement to the requested writ solely because of R.C. 145.01(A)(2).

{¶ 16} In January 2002, the court of appeals magistrate recommended denying the writ because Van Dyke had "not established that [PERB] abused its discretion when it determined that she had ceased being a carry-over employee who was considered to be a 'public employee' with the FCPDO when she terminated her employment with the FCPDO." In addition, the magistrate found that Van Dyke had waived her constitutional claims by not raising them in either her complaint or her amended complaint.

{¶ 17} Van Dyke objected to the magistrate's decision on the grounds that (1) the decision was not supported by the evidence and was contrary to law and (2) the procedural rulings denied her constitutional rights. Van Dyke had also moved to set aside the magistrate's order striking her and her attorney's affidavits.

{¶ 18} In September 2002, the court of appeals adopted the magistrate's findings of fact, but it sustained Van Dyke's first objection to the magistrate's decision and rejected the magistrate's conclusions of law. The court of appeals reasoned that because Van Dyke had "continued in an unbroken chain of service as an attorney for the county and a public employee when she returned to the FCPDO and resumed her duties as a staff attorney," she was "a public employee pursuant to R.C. 145.01(A), and consequently [was] entitled to membership status and service credits in PERS for the time period of April 10, 1986 to August 21, 1991." Because the court of appeals sustained Van Dyke's first objection, it did not address the merits of her remaining objection or her motion to set aside the magistrate's order striking the affidavits.

{¶ 19} This cause is now before the court upon the appeals of right of PERB and the Franklin County Board of Commissioners as well as the cross-appeal of Van Dyke.

## Mandamus

{¶ 20} Appellants and cross-appellees assert that the court of appeals erred in granting Van Dyke the requested writ of mandamus. "[M]andamus is an appropriate remedy where no statutory right to appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14. Because there is no statutory right to appeal PERB's denial of service credit to Van Dyke, mandamus is an available remedy. See *Mallory*, 82 Ohio St.3d at 239, 694 N.E.2d 1356; Ohio Adm.Code 145–1–11(D) ("The retirement board's decision on any determination conducted pursuant to this rule shall be final and determinative").

{¶ 21} In order to be entitled to the requested writ of mandamus, Van Dyke had to establish that PERB abused its discretion by denying her request for PERS service credit. *Mallory*, 82 Ohio St.3d at 239, 694 N.E.2d 1356. An "abuse of discretion" reflects an "unreasonable, arbitrary, or unconscionable decision." *Pipoly*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, at ¶ 14. Therefore, we must determine whether Van Dyke proved that PERB abused its discretion in denying her request for PERS service credit for her FCPDO employment from April 1986 to August 1991.

## R.C. 145.01(A)(2)

{¶ 22} Van Dyke claimed, and the court of appeals found, that she was a public employee entitled to PERS credit for her second term of employment with FCPDO because she was a carryover employee under R.C. 145.01(A)(2).

{¶ 23} R.C. 145.01(A)(2) includes as public employees entitled to PERS credit those PERS members who continue to perform the same or similar duties that they had previously performed for a public entity for a contractor who has contracted to take over the publicly operated function:

{¶ 24} "(A) 'Public employee' means:

{¶ 25} "* * *

{¶ 26} "(2) *A person* who is a member of the public employees retirement system and *who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function.* The governmental unit with which the contract has been made shall be deemed the employer for the purposes of administering this chapter." (Emphasis added.)

{¶ 27} A court's preeminent concern in construing a statute is the legislative intent in enacting a statute. *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994), 71 Ohio St.3d 362, 367, 643 N.E.2d 1122. To determine legislative intent, a court initially reviews the statutory language. *State ex rel. Solomon v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486.

{¶ 28} For the reasons that follow, we hold that PERB did not abuse its discretion by concluding that Van Dyke was not a public employee under the carryover provision in R.C. 145.01(A)(2).

{¶ 29} First, R.C. 145.01(A)(2) requires that the employee continue to perform the publicly operated function for the contractor after the publicly operated function is taken over by that contractor. See, also, R.C. 145.03(A) ("membership in the system is compulsory upon being employed and shall continue as long as public employment continues"). Van Dyke continued to work until 1985 performing the public function of providing legal services for indigent criminal defendants for the contractor, FCPDO, after its 1984 incorporation as a nonprofit entity. In November 1985, however, she resigned her position with FCPDO and began employment with the bureau of support. When she was reemployed by FCPDO in April 1986, she was not "continuing" her employment with a private contractor that was taking over a previously publicly operated function. Instead, in April 1986, she was beginning a term of employment with a private contractor that years before had taken over the publicly operated function.

{¶ 30} Second, contrary to the court of appeals' holding, Van Dyke did not "continu[e] in an unbroken chain of service as an attorney for the county * * * when she returned to the FCPDO and resumed her duties as a staff attorney." Rather, when she began her second period of employment with FCPDO, it was no longer a county agency.

{¶ 31} Third, Van Dyke did not perform the "same or similar duties" under FCPDO's direction as she had for her immediately preceding job with the bureau of support. "Words used in a statute must be taken in their usual, normal or customary meaning." *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 412, 632 N.E.2d 1292; R.C. 1.42. "Same" means "resembling in every way" and "identical," and "similar" means "very much alike," "comparable," and "alike in substance or essentials." Webster's Third New International Dictionary (1986) 2007 and 2120. Van Dyke's duties for FCPDO were primarily to represent indigent criminal defendants, whereas her duties for the bureau were to enforce child-support orders through civil means. These duties are neither the same nor similar. Van Dyke herself conceded this in her letter resigning from her position with the bureau of support after her first term of employment with FCPDO. In the

letter, she stated that she "miss[ed] terribly the trial work and the one to one representation of clients" that her job with FCPDO had provided.

{¶ 32} Fourth, FCPDO did not contract to take over the duties performed by Van Dyke at the bureau of support.

{¶ 33} Further, *Mallory* does not require a contrary result. *Mallory* emphasized the application of R.C. 145.01(A)(2) to an FCPDO attorney who (1) worked for FCPDO immediately prior to the 1984 incorporation and takeover of the previously publicly operated function of providing legal representation to indigent criminal defendants, and (2) continued to work for FCPDO after that date. *Mallory*, 82 Ohio St.3d at 245, 694 N.E.2d 1356. *Mallory* did not involve, however, an attorney who quit employment with FCPDO and was subsequently reemployed by FCPDO after its incorporation as a private entity. In fact, in *Mallory*, 82 Ohio St.3d at 245, 694 N.E.2d 1356, this court noted that the attorney was entitled to service credit following the 1984 incorporation of FCPDO because "[p]ost incorporation of FCPDO, appellant continued to act as an attorney providing representation to indigent criminal defendants."

{¶ 34} By contrast, after leaving FCPDO employment in November 1985, Van Dyke did not continue to act as an attorney representing indigent criminal defendants. Instead, she enforced support orders by civil means for the bureau of support. PERB and the Franklin County Board of Commissioners properly credited Van Dyke for her first term of service with FCPDO, which included her carryover period following the 1984 incorporation of FCPDO until her first resignation from FCPDO in November 1985. This fully complied with *Mallory*.

{¶ 35} Moreover, although Van Dyke correctly asserts that ambiguous pension statutes must be construed liberally in favor of public employees, see *State ex rel. Moss v. Ohio State Hwy. Patrol Retirement Sys.*, 97 Ohio St.3d 198, 2002-Ohio-5806, 777 N.E.2d 259, ¶ 21, there is no need to liberally construe a statute whose meaning is unequivocal and definite. *Solomon*, 72 Ohio St.3d at 65–66, 647 N.E.2d 486. Because R.C. 145.01(A)(2) is patently inapplicable to Van Dyke, the court must apply the language as written rather than resort to liberal construction of the language used. *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 347, 626 N.E.2d 939.

{¶ 36} Van Dyke further claims that *Norton v. Arizona Dept. of Pub. Safety Local Retirement Bd.* (1986), 150 Ariz. 303, 723 P.2d 652, supports upholding the court of appeals' judgment finding that she was a public employee under R.C. 145.01(A)(2). *Norton*, however, involved an Arizona statute that permitted reinstatement of service credit to a public employee who terminates his employment and is then reemployed by the public employer within two years of termination. The Arizona Supreme Court found that the employee had a "contractual interest" in having his service credit reinstated upon returning to

public employment within the specified two-year period. There is no comparable reemployment provision in R.C. Chapter 145, nor is there any state precedent recognizing a similar contractual interest. *Norton* is consequently inapposite.

{¶ 37} Therefore, the court of appeals erred by ignoring the plain language of R.C. 145.01(A)(2) and holding that Van Dyke was a carryover public employee under that statute for her second term of employment with FCPDO.

## Estoppel

{¶ 38} Although the court of appeals erred, we must still consider whether any of the alternate grounds raised by Van Dyke in her cross-appeal warrant the requested writ of mandamus. We " 'will not reverse a correct judgment based on an appellate court's erroneous rationale.' " *Phillips v. Irwin*, 96 Ohio St.3d 350, 2002-Ohio-4758, 774 N.E.2d 1218, ¶ 5, quoting *Johnson v. Timmerman–Cooper* (2001), 93 Ohio St.3d 614, 616, 757 N.E.2d 1153.

{¶ 39} Van Dyke asserts that appellant and cross-appellee Franklin County Board of Commissioners was equitably estopped from denying Van Dyke PERS service credits for the period April 1986 to August 1991. But equitable estoppel generally requires actual or constructive fraud. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 535, 751 N.E.2d 1032. There is no evidence that the board of commissioners committed fraud.

{¶ 40} Nor, as Van Dyke contends, did 1972 Ohio Atty.Gen.Ops. No. 72–055 *require* that the Franklin County Board of Commissioners or FCPDO request a determination by PERB. The sentence relied on by Van Dyke does not specify that the head of the employee's department *must* request a determination, only that the department head *should* request a determination. Id. at 2–219. More important, Attorney General opinions are not binding on courts; at best, they are persuasive authority. See *Gen. Dynamics Land Sys., Inc. v. Tracy* (1998), 83 Ohio St.3d 500, 504, 700 N.E.2d 1242. Therefore, the board of commissioners was not equitably estopped from denying her request for PERS service credits.

## Due Process and Right to Remedy

{¶ 41} Van Dyke next claims that she was entitled to a writ of mandamus requiring PERB either to grant her request for PERS service credits or to conduct new proceedings. Van Dyke argues that PERB denied her constitutional rights to due process and to a remedy by not conducting an evidentiary hearing and by not providing adequate findings to support its decision to deny Van Dyke's requested service credit.

{¶ 42} We, however, need not address the merits of these constitutional claims. Van Dyke did not raise these issues in her complaint or amended complaint, and appellants did not expressly or impliedly consent to litigation of these claims.

See, generally, *State ex rel. Miller v. Reed* (1999), 87 Ohio St.3d 159, 160, 718 N.E.2d 428, and cases cited therein.

## Evidentiary Rulings

{¶ 43} Van Dyke finally asserts that the court of appeals erred by striking her and her attorney's affidavits and restricting the evidence to the record before PERB. The admission of evidence is within the discretion of the trial court, and the court's decision will be reversed only upon a showing of an abuse of discretion. *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, ¶ 21.

{¶ 44} "Error may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected, and

{¶ 45} "* * *

{¶ 46} "(2) * * * the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Evid.R. 103(A). Van Dyke offered only her and her attorney's affidavits as proof of the substance of the evidence excluded by orders of the court of appeals magistrate.

{¶ 47} The court of appeals did not abuse its discretion in striking these affidavits. They related to Van Dyke's unpled constitutional claims and her contention that her duties at the bureau of support and FCPDO were similar. The latter evidence was not presented to PERB for its determination.

{¶ 48} Moreover, even if this evidence had been before the court of appeals, for the reasons previously stated, Van Dyke would still not be entitled to the writ.

## Conclusion

{¶ 49} Based on the foregoing, we reverse the judgment of the court of appeals and deny the writ. Van Dyke did not establish her entitlement to the requested extraordinary relief in mandamus.

Judgment reversed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., dissent and would affirm the judgment of the court of appeals.

---

Dennis C. Belli, for appellee and cross-appellant.

Jim Petro, Attorney General, Joseph M. Marotta and Michael R. Gladman, Assistant Attorneys General, for appellant and cross-appellee Public Employees Retirement Board.

Ron O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr., Assistant Prosecuting Attorney, for appellant and cross-appellee Franklin County Board of Commissioners.