OPINION
{¶ 1} This is an appeal by relators-appellants, Greene County Department of Job and Family Services and the Greene County Auditor, from a judgment of the Franklin *Page 2 
County Court of Common Pleas, denying appellants' request for a writ of mandamus ordering respondent-appellee, Ohio Public Employees Retirement System, to deny a request by claimant, Susan A. Stiles, to participate in the Public Employees Retirement System ("PERS").
 {¶ 2} From 1976 until 1984, Susan A. Stiles (hereafter "Stiles"), worked as a public employee for the Greene County Welfare Department (hereafter "the welfare department"). From 1976 through 1979, Stiles worked as a social worker. In 1979, the welfare department created the Greene County Domestic Violence Project (hereafter "the county DVP") to provide the county with domestic violence prevention services, and Stiles became the director of the county DVP at that time. During the period from 1979 to 1984, Stiles was eligible for membership in PERS, and her employer made regular contributions.
 {¶ 3} In 1984, as a result of budget cuts, the welfare department made a decision to outsource the county's domestic violence prevention services exclusively to a newly spun-off non-profit organization (hereafter "the non-profit DVP"), with the intent that the non-profit DVP would continue providing the same services as those that had been available through the county DVP. According to Jack Harding, the executive director of the welfare department at that time, an agreement was reached between the welfare department and Stiles under which Stiles would serve as director of the newly formed non-profit DVP, and the welfare department would continue funding the non-profit DVP to cover Stiles' salary "as much as possible." (Harding Affidavit, at ¶ 10.)
 {¶ 4} On October 30, 2003, Stiles wrote to appellee requesting that she be permitted to purchase her years of service from July 1, 1984 through November 30, 1988. *Page 3 
Following a review, a compliance officer for appellee informed Stiles that her request was being denied on the basis that there was no contractual agreement between the welfare department and the non-profit DVP. Stiles appealed this determination to the Public Employees Retirement Board (hereafter "the retirement board"), and the matter was referred to a hearing examiner. In the proceedings before the hearing examiner, the welfare department asserted it did not contract with the non-profit DVP to take over the duties previously performed by the county.
 {¶ 5} On July 2, 2005, the hearing examiner issued a report, recommending that the retirement board deny Stiles' appeal to establish eligibility for membership in PERS from 1984 to 1988. While the hearing examiner found there was "some evidence in the record to suggest that a contract did exist," and that Stiles' duties were the same under the contract as they had been when she was an employee of the welfare department, the hearing examiner recommended that the retirement board find Stiles ineligible to claim public employer service time for her service from 1984 through 1988. More specifically, the hearing examiner found there was insufficient evidence to establish a contract between the welfare department and the non-profit DVP.
 {¶ 6} On July 19, 2005, Stiles filed objections to the hearing examiner's report and recommendation. On November 16, 2005, the retirement board voted to modify the hearing examiner's findings of fact and to reject the conclusions of law, concluding instead that a contract existed between the Greene County Department of Job and Family Services (formerly the welfare department) and the non-profit DVP, and that Stiles was a public employee while employed by the non-profit DVP for the time period of 1984 to 1988. The retirement board further determined there was sufficient evidence that Stiles *Page 4 
continued to perform the same or similar duties under the direction of the non-profit entity that took over the duties formerly performed by Greene County Job and Family Services, and, therefore, Stiles was a carryover employee eligible for PERS coverage during that period.
 {¶ 7} On December 7, 2005, appellants filed a complaint for declaratory judgment in the Greene County Court of Common Pleas, requesting a judgment declaring that appellants did not owe any delinquency to appellee. On December 27, 2005, appellants filed an amended complaint, requesting a writ of mandamus in addition to declaratory relief. On January 19, 2006, appellee filed a motion to transfer the matter to the Franklin County Court of Common Pleas based upon venue. The trial court granted appellee's motion to transfer by entry filed February 23, 2006.
 {¶ 8} Following transfer to the Franklin County Court of Common Pleas, appellants agreed to dismiss Count 1 of their amended complaint (seeking a declaratory judgment). On October 2, 2006, the trial court granted a motion by Stiles to intervene.
 {¶ 9} By decision filed March 28, 2007, the trial court denied appellants' request for a writ of mandamus, finding that the retirement board "had `some evidence' to support their decision to treat Stiles as a carryover public employee." The decision of the trial court was journalized by judgment entry filed April 20, 2007.
 {¶ 10} On appeal, appellants set forth the following assignment of error for this court's review:
 THE TRIAL COURT ERRED WHEN IT DETERMINED THAT SOME EVIDENCE EXISTED TO PROVE THAT THE GREENE COUNTY WELFARE DEPARTMENT HAD ENTERED INTO A CONTRACT WITH THE NON-PROFIT DVP. *Page 5 
 {¶ 11} Appellants contend the trial court erred in denying their request for a writ of mandamus and affirming the retirement board's decision finding that Stiles was a carryover public employee, for PERS purposes, for the time period from 1984 through 1988. Appellants first contend that Harding, the welfare department's former executive director, lacked contractual capacity, either as a principal or agent of the Greene County Board of Commissioners (hereafter "county commissioners"), to form a contract with the non-profit DVP under R.C.145.01(A)(2). Appellants further argue that Stiles had a break in service which established that a contractual relationship did not exist between her and the welfare department.
 {¶ 12} In order to be entitled to a writ of mandamus, a relator is required to demonstrate "(1) the relator has a clear legal right to the relief requested, (2) the respondent is under a clear legal duty to perform the requested act, and (3) the relator has no plain and adequate remedy in the ordinary course of law." State ex rel. Ohio Civ. Serv.Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.,104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 9. The Ohio Supreme Court has held that "mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." State ex rel. Pipoly v. State Teachers RetirementSys., 95 Ohio St.3d 327, 2002-Ohio-2219, at ¶ 14. Further, "a `clear legal right to a writ of mandamus exists when the board is found to have abused its discretion by entering an order that is not supported by some evidence.'" State ex rel. Schaengold v. Ohio Pub. Emps. RetirementSys., 114 Ohio St.3d 147, 2007-Ohio-3760, at ¶ 19. *Page 6 
 {¶ 13} In reviewing a trial court's denial of a request for a writ of mandamus, this court "must decide whether the trial court exercised sound, legal and judicial discretion in deciding to deny the writ of mandamus." State ex rel. Bosley v. Elyria Civ. Serv. Comm. (July 5, 2000), Lorain App. No. 99CA007327. An appellate court will not reverse a trial court's determination on this issue in the absence of an abuse of discretion. Id.
 {¶ 14} As noted above, appellants' initial contention is that the welfare department's former executive director, Harding, did not have the contractual authority, either as a principal or agent, to enter into a contract on behalf of the county commissioners. Appellants maintain there is no evidence that the county commissioners directed the welfare department, or its executive director, to contract with the non-profit DVP for any public social services.
 {¶ 15} In response, appellee argues that the issue whether Harding had capacity to enter into a contract with the DVP is a factual issue that could have been raised while Stiles' claim was pending before the board, and again at the trial court level. Appellee argues that appellants forfeited this argument by failing to raise it at the appropriate time. We agree.
 {¶ 16} A review of the record in this case indicates that appellants never raised, either during the administrative proceedings or before the trial court, the issue of Harding's capacity to contract on behalf of the county commissioners. Having failed to raise this issue before the retirement board or the trial court, appellants have forfeited the right to appeal it here. See Moyer's Auto Wrecking, Inc. v. Ohio Motor VehicleSalvage Dealer's Licensing Bd. (Dec. 18, 2001), Crawford App. No. 3-01-19 (failure to raise issue *Page 7 
before board or trial court constitutes waiver on appeal); Gamad v.State Med. Bd. (Oct. 14, 1993), Franklin App. No. 93AP-292 (same).
 {¶ 17} The remaining issue before this court is whether the trial court erred in finding that the retirement board had some evidence to support its decision to treat Stiles as a carryover public employee. In making this determination, the trial court noted that the executive director and Stiles both averred they entered into a verbal contract, pursuant to Title XX regulations, and that Stiles continued to provide domestic violence prevention services to members of the community.
 {¶ 18} Appellants contend the evidence failed to establish the existence of a contract between a public entity and a private contractor as required under R.C. 145.01. Appellants maintain that Stiles' resignation from her position as director of the county DVP to assume her duties as director of the non-profit DVP constituted a break in service, and that she became an employee for a private contractor at that time, thereby precluding her from entitlement to PERS benefits.
 {¶ 19} Pursuant to R.C. 145.01(A)(2), a "public employee" is defined to mean:
 A person who is a member of the public employees retirement system and who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function. The governmental unit with which the contract has been made shall be deemed the employer for the purposes of administering this chapter.
 {¶ 20} Under Ohio law, a valid contract may be either written or oral.Ayad v. Radio One, Inc., Cuyahoga App. No. 88031, 2007-Ohio-2493, at ¶ 24. The elements necessary for a contract include "`an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual *Page 8 
asset and legality of object and of consideration.'" Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16, quoting PerlmuterPrinting Co. v. Strome, Inc. (N.D.Ohio 1976), 436 F.Supp. 409, 414. Further, "[a] `meeting of the minds' as to the essential terms of the contract is a requirement to enforcing the contract." Id. In general, "courts recognize three types of contracts: express, implied in fact, and implied in law." Spectrum Benefit Options, Inc. v. Med. Mut. ofOhio, Athens App. No. 06CA19, 2007-Ohio-5562, at ¶ 26. Under an express contract, "the parties assent to the terms as actually expressed through the offer and acceptance." Id. Where a contract is implied in fact, "the meeting of the minds is shown by the surrounding circumstances that demonstrate that a contract exists as a matter of tacit understanding." Id.
 {¶ 21} As noted under the facts, Stiles worked for the welfare department from 1976 through 1984, and during this time her position was funded in part by a portion of the welfare department's Title XX funds. According to the welfare department's former executive director, Harding, Greene County faced extensive budget cuts in 1984, and when Title XX funds were cut he was faced with either closing down the county DVP or "converting it into a non-profit organization." (Harding Affidavit, at ¶ 5.) In response, the welfare department made the decision to take the county DVP and create a "spun off" non-profit organization. (Harding Affidavit, at ¶ 3.) Under this plan, the county's domestic violence prevention services would be outsourced exclusively to the newly created entity, and this non-profit DVP would provide the same types of services as its predecessor. Stiles agreed to become the director of the newly created non-profit organization, and she remained its director until November 30, 1988. *Page 9 
 {¶ 22} Harding averred in his affidavit that, as executive director of the welfare department, he entered into an agreement with Stiles, promising to cover as much of her salary in the new entity as possible. Stiles also submitted an affidavit averring that she entered into such an agreement, and that the non-profit DVP "continued exclusively providing the domestic violence prevention services to county residents." (Stiles Affidavit, at ¶ 13.) Harding represented in his affidavit that "Stiles remained the Director of the DVP after it became a non-profit organization and that * * * starting in late 1984 the DVP began receiving funding in part from both the Welfare Department and the assignment of marriage license fees collected by the county." (Harding Affidavit, at ¶ 11.) Further, Harding terminated the county based alcohol recovery program and the county's "Motor Meals" program in order to funnel a portion of the remaining Title XX funds to the nonprofit DVP to cover Stiles' salary (with the discontinued county programs later being funded by other state agencies). (Harding Affidavit, at ¶ 12.) Stiles similarly averred that the non-profit DVP was funded in part by a portion of the welfare department's Title XX funds, as well as the county's marriage licenses fees initially designated by the county for the county DVP in 1980.
 {¶ 23} According to Harding, "there are no available official records pertaining to the formation of the DVP or of the outsourcing designation of the DVP to provide the domestic violence prevention services." (Harding Affidavit, at ¶ 14.) Harding averred that the Title XX contract was on a year-to-year basis, and contracts were destroyed after ten years. When PERS staff members made requests for copies of any contracts between the welfare department and the non-profit DVP, the response referenced the Title XX contracts that had been destroyed as part of the records retention policy. *Page 10 
 {¶ 24} Upon review, we find that the trial court did not err in finding "some evidence" in the record to support the existence of an agreement whereby the welfare department would fund the newly created non-profit entity, and Stiles would continue performing the same duties with the new entity as she performed with the county DVP. The evidence as to such an agreement, as set forth in the affidavits of Harding and Stiles noted above, was unrebutted in the record. Further, in considering the relationship that existed after the non-profit DVP was created, there is evidence that the parties performed under the agreed terms, i.e., that Stiles continued to perform her former duties for the non-profit DVP, and that the welfare department continued to fund her salary.
 {¶ 25} In support of their position, appellants cite, as they did before the trial court, the Ohio Supreme Court's decision in State exrel. Van Dyke v. Pub. Emps. Retirement Bd., 99 Ohio St.3d 430,2003-Ohio-4123. We find, however, that the trial court properly distinguished the facts of the instant case from those in Van Dyke.
Under the facts of Van Dyke, the relator, Van Dyke, an attorney, began working for the county public defender's office in 1982. In 1984, that office incorporated as a non-profit corporation. Van Dyke resigned from her public defender position in November 1985, and immediately began work as a staff attorney with the Franklin County Court of Common Pleas, Division of Domestic Relations, in the court's bureau of support section. After serving five months of service as a court staff attorney, Van Dyke began a second term with the public defender's office in April 1986. Van Dyke resigned from that position in 1991, and subsequently sought PERS service credits.
 {¶ 26} While granting Van Dyke service credit for her earlier time as a public defender, PERS denied her request for service credit for her employment with the public *Page 11 
defender's office from April 1986 to August 1991, and the retirement board affirmed the decision of PERS. On appeal, this court found that Van Dyke was a public employee, pursuant to R.C. 145.01(A), reasoning that she had continued in an "`unbroken chain of service as an attorney for the county and a public employee when she returned to the FCPDO and resumed her duties as a staff attorney.'" Van Dyke, supra, at ¶ 18.
 {¶ 27} On further appeal, the Ohio Supreme Court reversed, finding that the retirement board did not abuse its discretion in finding that Van Dyke "was not a public employee under the carryover provision in R.C. 145.01(A)(2)." Id., at ¶ 28. The Supreme Court determined that, when Van Dyke was re-employed by the public defender's office in April 1986, "she was not `continuing' her employment with a private contractor that was taking over a previously publicly operated function. Instead, in April 1986, she was beginning a term of employment with a private contractor that years before had taken over the publicly operated function." Id., at ¶ 29.
 {¶ 28} The Supreme Court further found in part that, "after leaving FCPDO employment in November 1985, Van Dyke did not continue to act asan attorney representing indigent criminal defendants," but, instead, "enforced support orders by civil means for the bureau of support." (Emphasis added.) Id., at ¶ 34. Thus, the Supreme Court found significant the fact that the public defender "did not contract to take over the duties performed by Van Dyke at the bureau of support." Id., at ¶ 32. In making this determination, the Supreme Court distinguished the facts of Van Dyke from those in its earlier decision in State ex rel.Mallory v. Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235. Specifically, the Van Dyke court noted that, in Mallory, "the attorney was entitled to service credit following the 1984 incorporation of FCPDO because `post incorporation of *Page 12 
FCPDO, appellant continued to act as an attorney providing representation to indigent criminal defendants.'" Van Dyke, supra, at ¶ 33.
 {¶ 29} In the present case, the trial court found Van Dyke
distinguishable from the facts at issue inasmuch as Stiles resigned from her employment with the county DVP solely for the purpose of immediately continuing the same duties with the newly established non-profit DVP, and it was undisputed Stiles provided domestic prevention services both before and after the county DVP became a non-profit DVP. The record in this case supports the trial court's determination that Stiles had no break in service, i.e., that she continued her service as director after the county DVP was converted to a nonprofit entity, performing the same duties as before. Thus, we agree with the trial court's determination that Van Dyke is distinguishable from the facts of this case, and we reject appellants' argument that the facts of this case precluded Stiles from being deemed a carryover employee.
 {¶ 30} Finding no abuse of discretion by the trial court, appellants' single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1