[Cite as *DeMatteo v. State Teachers Retirement Sys.*, 2018-Ohio-3635.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Teri F. DeMatteo, | : | |
| Relator, | : | |
| v. | : | No. 17AP-678 |
| State Teachers Retirement System and State Teachers Retirement System Ohio Retirement Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on September 11, 2018

**On brief**: *Law Offices of Gary A. Reeve*, and *Gary A. Reeve*, for relator.

**On brief**: *Michael DeWine*, Attorney General, *John J. Danish*, and *Mary Therese J. Bridge*, for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, P.J.

{¶ 1} Relator, Teri F. DeMatteo, has filed an original action requesting this court issue a writ of mandamus ordering respondent, the Board of the State Teachers Retirement System, to either vacate its denial of relator's appeal and process that appeal in a normal fashion, or to vacate respondent's denial of relator's disability benefits application and grant such benefits retroactive to the date on which she first filed for benefits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. The magistrate issued the

appended decision, including findings of fact and conclusions of law, recommending this court issue a writ of mandamus ordering respondent to accept relator's appeal and give her the opportunity to present medical evidence which is contrary to the report of the independent medical examiner.

{¶ 3} Respondent has filed two objections to the magistrate's report. Specifically, respondent asserts that: (1) its denial of relator's disability benefits appeal as untimely did not constitute an abuse of discretion, and (2) there was some evidence to support its denial of relator's disability benefits application.

{¶ 4} With respect to the first objection, respondent's arguments regarding whether it appropriately denied relator's appeal were adequately addressed by the magistrate. For the reasons stated in the decision of the magistrate, we overrule respondent's objection to the magistrate's conclusion that respondent abused its discretion when it determined relator's notice of appeal was untimely.

{¶ 5} Respondent's second objection to the magistrate's decision involves the merit issue, i.e., whether there was some evidence to support respondent's denial of the application for disability benefits. However, in light of our determination that the magistrate properly concluded respondent abused its discretion in denying relator's administrative appeal as untimely, we further agree with the magistrate's recommendation that this matter be remanded to respondent to afford relator the opportunity to present, in accordance with Ohio Adm.Code 3307:1-7-05(2)(a), "additional medical evidence contrary to the findings of the independent medical examiners."

{¶ 6} Following an examination of the magistrate's decision, as well as an independent review of the record, we overrule respondent's objections to the magistrate's decision. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we grant a writ of mandamus ordering respondent to accept relator's appeal and to provide her the opportunity to present additional medical evidence regarding the issue of whether she is entitled to disability benefits.

*Objections overruled; writ of mandamus granted.*

KLATT and SADLER, JJ., concur.

# _____APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Teri F. DeMatteo, | : | |
| Relator, | : | |
| v. | : | No. 17AP-678 |
| State Teachers Retirement System and State Teachers Retirement System Ohio Retirement Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on April 27, 2018

*Law Offices of Gary A. Reeve*, and *Gary A. Reeve*, for relator.

*Michael DeWine*, Attorney General, *John J. Danish*, and *Mary Therese J. Bridge*, for respondents.

## IN MANDAMUS

{¶ 7} Relator, Teri F. DeMatteo, has filed this original action requesting this court issue a writ of mandamus ordering respondent, the board of the State Teachers Retirement System ("STRS" or "board"), to either vacate its denial of relator's appeal, process that appeal in a normal fashion, or vacate the denial of relator's disability benefits and grant those disability benefits retroactive to the date on which she first filed.

Findings of Fact:

{¶ 8} 1. Relator worked at Columbus State Community College ("CSCC") on a part-time basis as an adjunct instructor in the American Sign Language interpreting

major. (Information concerning her schedule and/or number of courses taught was not found in the stipulation of evidence.)

{¶ 9} 2. On May 4, 2017, relator filed her application for disability benefits with STRS. Relator indicated the last day she worked as an adjunct professor at CSCC was December 19, 2015. Relator listed the following conditions which, in her opinion, were causing her disability: rheumatoid arthritis and fibromyalgia. In the section where she was asked to describe specific job duties she was unable to perform due to the disabling conditions, relator stated:

> As an instructor in the IEP, using sign language is a requirement. Joint swelling and pain caused by the rheumatoid arthritis prohibited my physical ability to do so. Additionally, chronic fatigue, a symptom of both diseases, factored in. Brain fog, a symptom of the fibromyalgia and a side effect of the rheumatoid arthritis medication impaired my ability to think and process clearly. Driving from Johnstown to CSCC was physically challenging and exhausting. I was worn out before class even started. Despite having lesson plans prepared, it was difficult to stay focused and maintain continuity of presenting the material. It was frustrating to not be able to freely use sign language as a modeling tool for the students.

{¶ 10} 3. In support of her application, relator submitted the April 24, 2017 report of her treating physician, Matthew Mundwiler, M.D., who indicated the primary medical conditions for which he was providing treatment to relator was the rheumatoid arthritis, and the date of onset was December 2015. Dr. Mundwiler indicated, in his opinion, relator's rheumatoid arthritis was disabling, was expected to last at least 12 or more months, and the date the condition first presented relator from completing her job duties was February 1, 2016. Dr. Mundwiler indicated the fibromyalgia was not, in his opinion, disabling. Dr. Mundwiler noted the following disabling symptoms: pain, fatigue, and shortness of breath, and noted the following physical exam findings: synovitis bilateral hands, slow healing wounds.

{¶ 11} 4. STRS's Medical Review Board authorized Ronald L. Whisler, M.D., to examine relator. In his June 22, 2017 report, Dr. Whisler noted relator's chief complaints were joint, hand, and back pain. Dr. Whisler provided the following explanation of relator's symptoms:

This member teaches sign language at CSU as an adjunct instructor in sign language interpreting major. She states that December 2015 she suddenly developed marked swelling and stiffness with arthralgias of the hands and wrist – left first then right. The symptoms resulted in loss of mobility and inability to function at her job and her last day of instruction was December 19, 2015.

Her other musculoskeletal symptoms consist of back pain with scoliosis neck pain, left hip pain and bilateral knee pain. She states that she has been afflicted with fibromyalgia since 1992 with associated body pain-fatigue-stiffness-light sensitivity-panic attacks-ringing in the ears-flu like symptoms- and brain fog. She takes lyrica and Effexor for the fibro.

Her symptoms are every day and all day. Her pain is aggravated by standing too long in one position but also aggravated by activity. Pain is relieved by heat-rest stretching, massage and by Biofreeze. She notes swelling in her fingers and her morning stiffness is all day stiffness. Symptoms worst am and evening.

When her hands suddenly swelled, her nurse practice specialist ordered blood tests and discovered that the tests for rheumatoid arthritis were positive. She was referred to Dr. Mundwiler a rheumatologist who prescribed 10 mg weekly methotrexate. She continued to have the pain and stiffness with swelling. The dose of methotrexate was increased to 20 mg weekly that was intolerable because of nausea and hair loss. She was then prescribed Arava which also induced intolerable nausea and the hair loss continued. She has been seeing her rheumatologist about every 4-6 weeks and does get IM injections of Kenalog which helps her symptoms for about 1 week.

A few months ago, she started Enbrel 50 mg weekly and tolerated Enbrel well with some lessening of her joint symptoms. However, March of this year she was hospitalized at Saint Anns with pneumonia. She recovered from the pneumonia and for the past three weeks has restarted weekly Enbrel injections. She does note injections site redness and irritation with the auto-injector device.

(Sic passim.)

Under his physical findings on examination, Dr. Whisler noted:

Musculoskeletal: all joints examined, no swelling, no tenderness, no pain, no limitation of motion and no enthesitis. Except for maybe minimal synovial thickening along the ulnar styloid, I cannot find any synovitis. Hands do reveal some early Heberdens of her DIPs. She does have kyphoscoliosis and tenderness trochanteric bursa left hip. Good ROM joints – muscle strength and DTRs normal. Gait normal. She has good dexterity of the hands and fingers bilateral-good strength-mobility. Very good ROM of the wrists and the normal hand writing sample enclosed as example of current dexterity and fine motor.

{¶ 12} Dr. Whisler obtained x-rays of relator's hands which showed "minimal changes that could indicate rheumatoid with no erosions of joint space narrowing except for the changes of the DIPs with osteoarthritis. The DIP changes are of no functional consequence." Ultimately, Dr. Whisler opined relator was not permanently and totally disabled from rheumatoid arthritis, and she had not yet achieved maximum medical benefits because, in his opinion, additional treatments could be attempted.

{¶ 13} 5. Three members of the Medical Review Board examined the medical evidence and submitted their initial recommendations. In his June 29, 2017 report, Edwin H. Season, M.D., recommended disability benefits be denied, stating:

Dr. Whisler performed a rheumatology examination and concluded that [relator] had rheumatoid arthritis with positive rheumatoid factor (involving hands and wrists) and fibromyalgia. Dr. Whisler felt [relator] was not permanently disabled. Dr. Whisler felt she was capable of full work teaching activities.

Based on the records of Dr. Mundwiler and the IME report of Dr. Whisler, I recommend disability benefits be denied.

{¶ 14} 6. In his June 30, 2017 report, Marc Cooperman, M.D., recommended that disability benefits be denied, stating:

An independent medical examination was performed on June 22, 2017, by Dr. Ronald Whisler, a specialist in Rheumatology. Muscle strength was normal, without tenderness or atrophy. Examination of her joints showed no swelling, tenderness, pain, limitation of motion or enthesitis.

There was no evidence of synovitis, with the possible exception of minimal synovial thickening along the ulnar styloid. Joint range of motion was normal. There was good dexterity of her hands and fingers bilaterally. Handwriting was normal. Wrist range of motion was good. Dr. Whisler obtained hand x-rays, which showed minimal changes "of no functional consequence." It was Dr. Whisler's opinion that [relator] is not disabled.

It is my opinion that [relator] is not disabled. Despite her subjective complaints, there are no objective findings, either on physical examination or x-rays, that would prevent her from performing her job-related duties, including using her hands for signing. Her synovitis is minimal, and she is receiving appropriate treatment.

{¶ 15} 7. In his July 2, 2017 report, James N. Allen, M.D., recommended relator's disability retirement be approved and she be re-examined in one year, stating:

In summary, this STRS member has pre-existing fibromyalgia that is not disabling. She now has well-substantiated rheumatoid arthritis. Although her hand function was good when examined by an independent medical examiner, rheumatoid arthritis can affect joints more during certain times of the day, for example, mornings. Additionally, there was soft tissue swelling noted on hand x-rays that would suggest that there may still be some degree of active inflammatory arthritis. The degree of arthritis is relatively mild and would not be disabling for most teaching occupations but even a small degree of hand and finger joint arthritis could be disabling for a sign language teacher. Because of the findings on hand x-rays, I am inclined to recommend approval of disability retirement. However, because Dr. Whisler has noted that there are treatment options that may further improve her hand arthritis, I recommend re-examination in 1 year since better control of her rheumatoid arthritis will likely allow her to return to work in the future.

{¶ 16} 8. On July 17, 2017, the Medical Review Board met in special conference to discuss relator's application and recommended disability benefits be denied. Dr. Cooperman noted:

Based on the essentially normal findings by Dr. Whisler, a specialist in Rheumatology, it was the unanimous opinion of

the Medical Review Board, with which I concur, that [relator] is not disabled. [Relator's] need to use her hands for signing was taken into consideration. However, there were not objective findings either on her examination or her x-rays that would prevent her from continuing to function as an Adjunct Instructor.

Dr. Allen explained his decision to deny disability, stating:

Today, the STRS Medical Review Board met to discuss disability materials regarding [relator]. Previously, I had expressed concern that her hand x-rays showed signs of soft tissue swelling. However, it was noted in discussion that x-rays can show soft tissue swelling without active synovitis. It was further discussed that Dr. Whisler provided strong evidence from his physical exam and from [relator's] handwriting sample that her finger joints are not currently involved by her rheumatoid arthritis to the point that would result in disability. The Board voted unanimously to deny disability.

{¶ 17} 9. In a letter dated August 18, 2017, relator was informed the board took official action and denied her application for disability benefits. The letter also explained relator's right to appeal:

Medical evaluation and Board action was conducted in accordance with section 3307.62 of the Revised Code. *You have the right to appeal* the Retirement Board action under Section 3307.62 of the Revised Code and Rule 3307:1-7-05 of the Administrative Code, *provided written notice of appeal is received by STRS Ohio by the close of business, within 15 calendar days from your receipt of this letter.* The request must be accompanied by a statement from you, your counsel or attending physician that an appeal will be based on additional medical evidence contrary to the findings of the Medical Review Board. Additional information regarding the procedures and deadlines for an appeal will be mailed to you if your appeal option is exercised.

**STRS Ohio strictly enforces all deadlines associated with appeals. The 15-day deadline for STRS Ohio's receipt of your written request for appeal as stated above is firm. STRS Ohio will not accept postmark dates or any other delay beyond the stated deadline.**

(Italics added; bold sic.)

{¶ 18} 10. In a letter dated August 31, 2017 and mailed to STRS at 275 East Broad Street, Columbus, Ohio 43215-3771, relator exercised her right to appeal the denial of her disability benefits and indicated she would present additional medical evidence in support.

{¶ 19} 11. According to the date stamp on that letter, STRS received it September 6, 2017.

{¶ 20} 12. In a letter also dated September 6, 2017, relator was notified her request for appeal was being denied as untimely. Specifically, that letter provided:

> STRS Ohio strictly enforces all deadlines associated with appeals as you were informed. We provided notice to you on August 18, 2017, of the Retirement Board's action to deny your disability benefits. Priority Mail tracking shows that you received this notice on August 21, 2017. *Your right to appeal* the STRS Ohio Retirement Board action to deny your disability benefits *required a written appeal request to be received by STRS Ohio by the close of business on September 5, 2017.* A request to appeal was received from you at the STRS Ohio building on September 6, 2017.
>
> *Since the appeal request was not received by the close of business on September 5, 2017, STRS Ohio cannot grant the request for an appeal.*

(Emphasis added.)

{¶ 21} 13. Thereafter, relator filed the instant mandamus action in this court asserting, in part, that STRS's method of picking up its mail caused her timely notice to be late.

{¶ 22} 14. As part of its response to this mandamus action, STRS acknowledged "mail is picked up twice a day between 6:00 and 6:30 a.m. and again between 9:00 and 9:30 a.m."

{¶ 23} 15. Following oral argument, the matter is currently before the magistrate.

<u>Conclusions of Law</u>:

{¶ 24} For the reasons that follow, it is this magistrate's decision this court should issue a writ of mandamus ordering respondent to accept relator's filing of her notice of appeal timely and to conduct further proceedings in accordance with law.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} Mandamus is the appropriate remedy where there is no statutory right of appeal from a decision of a public retirement system. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219; *State ex rel. Mallory v. Pub. Emp. Retirement Bd.*, 82 Ohio St.3d 235 (1998); *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123; *State ex rel. Schaengold v. Pub. Emp. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760. As such, the determination by STRS and its retirement board of whether a person is entitled to disability retirement benefits is reviewable in mandamus because R.C. 3307.62 does not provide for an appeal from the administrative determination. *Id.* Determination of whether a member of STRS is entitled to disability retirement is fully within the discretion of the board. *See* R.C. 3307.62(F); *Fair v. School Emps. Retirement Sys.*, 53 Ohio St.2d 118 (1978).

{¶ 27} R.C. 3307.62 pertains to disability coverage and provides in pertinent part:

> (A) The state teachers retirement system shall provide disability coverage to each member participating in the STRS defined benefit plan who * * *:
>
> (1) * * * has at least five years of qualifying service credit;
>
> * * *
>
> (B) Application for a disability benefit may be made by a member * * *.
>
> The application for a disability benefit shall be made on a form approved by the board. * * *
>
> * * *
>
> (C) Medical examination of the member shall be conducted by a competent, disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be

permanent for twelve continuous months following the filing of an application. * * *

(D) Application for a disability benefit must be made within a two-year period from the date the member's contributing service terminated * * *.

(E) If the physician or physicians determine that the member qualifies for a disability benefit, the board concurs with the determination, and the member agrees to medical treatment as specified in division (G) of this section, the member shall receive a disability benefit under section 3307.63 or 3307.631 of the Revised Code. If such physician or physicians determine that the member does not qualify for a disability benefit, the report of the examiner or examiners shall be evaluated by a board of medical review composed of at least three physicians appointed by the retirement board.

(F) The state teachers retirement board shall render an order determining whether or not the applicant shall be granted a disability benefit. Notification to the applicant shall be issued, and upon the request of an applicant who is denied a disability benefit, a hearing or appeal relative to such order shall be conducted in accordance with procedures established by the retirement board.

(G) The state teachers retirement board shall adopt rules requiring each disability benefit recipient, as a condition of continuing to receive a disability benefit, to agree in writing to obtain any medical treatment recommended by the board's physician and submit medical reports regarding the treatment. * * *

{¶ 28} Supplementing R.C. 3307.62 is Ohio Adm.Code 3307:1-7-05, which provides in pertinent part:

The following procedures are hereby established for the appeal of any denial or termination of disability benefits by the retirement board following an independent medical examination by the state teachers retirement system.

(A) At least seven days before a recommendation is presented to the retirement board, written notification shall be issued to the applicant or recipient. This notice shall include the recommendation to be presented to the board.

* * *

(B) Following board action terminating or denying disability benefits:

(1) The applicant or recipient will be informed in writing of the action taken by the board. Notification shall include:

(a) A statement that medical evaluation and board action was conducted in accordance with section 3307.48 or 3307.62 of the Revised Code.

(b) Confirmation that the applicant or recipient has the right to appeal the board action.

(c) A statement explaining that written notice of appeal must be filed with the retirement system no later than fifteen calendar days from receipt of notification of denial or termination.

(d) An explanation of future rights and limitations upon the rights to again apply for disability benefits if an appeal is not pursued.

(2) Procedure for exercising right to appeal:

(a) Written notice of appeal, accompanied by a statement from the applicant or recipient, his or her counsel and/or attending physician that an appeal will be based on contrary to the findings of the independent medical examiners, must be filed with the retirement system within fifteen calendar days of receipt of notification of board action.

{¶ 29} R.C. 3307.62 and Ohio Adm.Code 3307:1-7-05 require that an applicant for disability benefits has 15 days from the date they received notice their disability has been denied to appeal. In the present case, relator had until September 5, 2017, and respondent asserts it did not receive relator's notice of appeal dated August 31, 2017 until September 6, 2017, one day late. Ohio Adm.Code 3307:1-7-05(B)(1)(c) specifically requires the board to notify the member denied disability that "written notice of appeal must be filed with the retirement system no later than fifteen calendar days from receipt of notification of denial."

{¶ 30} As noted in the findings of fact, respondent's August 18, 2017 letter to relator informing her that her application for disability benefits had been denied informed her that she had the right to appeal "provided written notice of appeal is received by the

STRS Ohio by the close of business, within 15 calendar days from your receipt of this letter." Further, that letter provides the following address to which an appeal would be mailed: 275 East Broad Street, Columbus, Ohio 43215-3771. When relator mailed her notice of appeal, she mailed it to that same address. Nowhere in the notice was relator informed that her notice of appeal had to be "filed" within 15 days.

{¶ 31} As indicated previously, respondent acknowledges it picks up mail two times each day: first, between 6:00 a.m. and 6:30 a.m., and second, between 9:00 a.m. and 9:30 a.m. Given this fact, respondent is acknowledging mail is delivered to its building between 6:30 a.m. and 9:00 a.m. on the same day. Further, respondent is also acknowledging mail is delivered to its building after 9:30 a.m. and prior to 6:00 a.m. on the following day. This is the only logical conclusion to be reached. It does not appear respondent makes any effort to pick up mail at a time which is near to the "close of business." Further, respondent has never indicated whether or not relator's notice of appeal was picked up on September 6 at 6:30 a.m. (meaning it was delivered to the building after 9:30 a.m. on September 5 and before 6:00 a.m. on September 6), just that respondent stamped it as being received on September 6, 2017.

{¶ 32} Respondent's notice to relator and to other applicants is deficient because it does not inform applicants that their notice of appeal must be filed—the notice only informs applicants that their notice of appeal must be received. Furthermore, the notice tells applicants their notice of appeal must be received by the close of business on the 15th day. The magistrate finds that in failing to follow Ohio Adm.Code 3307:1-7-05(B)(1)(c) and misinforming applicants of the requirements to file appeals, respondent has created a clear legal right to applicants and has imposed a clear legal duty on itself to actually process the mail that arrives at its building address at the close of business. Respondent clearly fails to do so here.

{¶ 33} In *Brass Pole v. Ohio Dept. of Health*, 10th Dist. No. 08AP-1110, 2009-Ohio-5021, this court stated:

> Where a statute confers the right of appeal, an appeal may be perfected only in the manner prescribed by statute. *Camper Care, Inc. v. Forest River, Inc.*, 10th Dist. No. 08AP-146, 2008-Ohio-3300 (citations omitted). Ohio courts have consistently held that "a party adversely affected by an agency decision must * * * strictly comply with R.C. 119.12 in order to

perfect an appeal." *Hughes* [*v. Ohio Dept. of Commerce*, 114 Ohio St.3d 47, 2007-Ohio-2877], at ¶ 17. And, as stated above, Ohio courts, including this one, have held that the failure to file a notice of appeal with the appropriate agency within the 15-day limit provided for in R.C. 119.12 is a jurisdictional defect. *Frasca* [*v. State bd. of Chiropractic Examiners* (July 30, 1998), 10th Dist. No. 97APE10-1387]; *Harrison* [*v. Ohio State Med. Bd.* (1995), 103 Ohio App.3d 317].

Depositing the notice of appeal in the mail does not constitute a filing under R.C. 119.12. To be timely filed, a notice a notice of appeal must be received within the time period set forth in R.C. 119.12. *Watts v. Ohio Dept. of Ins.*, 8th Dist. No. 87849, 2007-Ohio-81; *Leonard v. Ohio Bd. of Nursing* (June 8, 2000), 10th Dist. No. 99AP-1154, 2000 Ohio App. LEXIS 2407; *Frasca*; *Burton v. Dept. of Agriculture* (Feb. 9, 1993), 10th Dist. No. 92AP-1499, 1993 Ohio App. LEXIS 782.

{¶ 34} Respondent contends the factual situation presented here is similar to the factual situation presented in *Wiltz v. Accountancy Bd. of Ohio*, 10th Dist. No. 16AP-169, 2016-Ohio-8345. In that case, Cassandra Wiltz appealed a decision from the Court of Claims of Ohio. As part of her case, Wiltz argued she mailed her objections to the Court of Claims by overnight express mail, and the mail was received and available for pick-up on the day it was due to be filed. *Id.* at ¶ 21. Wiltz asserted she had a USPS tracking receipt indicating her objections were received and available for pick-up at the Court of Claims' post office on January 6, 2016. *Id.* The Court of Claims rejected Wiltz's evidence noting it was her duty, and not the duty of the court, to ensure her objections were timely filed with the court within 14 days pursuant to Civ.R. 53(B)(3)(b)(i). On appeal, this court held the Court of Claims did not abuse its discretion when it determined that Wiltz's filing was untimely. Respondent asserts, in the present case, it was relator's duty to ensure that her noticed arrived at STRS in time.

{¶ 35} The magistrate finds the facts presented in this case differ significantly from the facts in the *Wiltz* case. First and foremost, Civ.R. 53(B)(3)(b)(i) provides written objections to a magistrate's decision must be *filed* within 14 days of the filing of the decision. By comparison, while Ohio Adm.Code 3307:1-7-05(B)(2)(a) does indicate that a notice of appeal accompanied by a statement that the appeal will be based on evidence contrary to the findings of the independent medical examiners must be filed with the

retirement system within 15 calendar days of receipt of notification of the board's action, the letter which respondent sent to relator does not discuss the filing of the appeal. Instead, the letter STRS sent relator notifying her she had a right to appeal the denial specifically provides she has until the close of business within 15 days from her receipt of the letter. Nothing in the notice informs relator that she must file a notice of appeal, only that said notice must be received by STRS by the close of business. Respondent cannot provide applicants with information regarding their appeal which appears to be false, granting the applicants more than the Ohio Administrative Code provides and then not expect applicants will actually rely on that information.

{¶ 36} Second, in *Wiltz*, the objections were sent to a post office box. Here, relator's notice of appeal was sent to the office building where respondent has its offices as instructed. Third, in the letter denying relator the opportunity to appeal, STRS stated that her request was being denied because it "was not received by the close of business on September 5, 2017." Respondent acknowledges it does not check its mail at the close of business; instead, if mail is not received by 9:30 in the morning on the day it is due to be received, the mail, including relator's appeal herein, is considered to be late. The magistrate finds to do so results in a patently unfair result, which relator and other applicants who have found or may find themselves in the same situation do not deserve. People work and contribute money to their retirement systems expecting that retirement or disability benefits will be available when they need it. Here, relator did not miss out on her opportunity to appeal the denial of her disability benefits because of a technicality; instead, she missed out on her opportunity to file an appeal because respondent does not pick up its mail anywhere near the close of business despite the fact it tells applicants the close of business is the benchmark, the last moment their appeal must be received, and ignores that portion of the Ohio Administrative Code requiring people be informed an appeal must be filed.

{¶ 37} Relator also argues this court should simply grant a writ of mandamus ordering respondent to grant her disability application on grounds the medical evidence supports such a finding. However, the magistrate finds this court is not in a position to consider the medical evidence presented and determine whether or not relator's disability application should have been granted.

{¶ 38} Based on the foregoing, it is this magistrate's decision that respondent did abuse its discretion when it determined relator's notice of appeal was untimely, and this court should issue a writ of mandamus ordering respondent to accept relator's appeal and give her the opportunity to present medical evidence which is contrary to the report of the independent medical examiner, and, thereafter, respondent should make a determination as to whether or not relator is entitled to disability benefits.

/S/ MAGISTRATE
STEPHANIE BISCA

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).